LEELANAU TRANSIT CO. *v.* HOUDEK.

1. PLEADING—AMENDMENT—ABUSE OF DISCRETION.

In an action on notes given for the purchase price of corporate stock, it was not an abuse of judicial discretion to allow, on the trial, an amendment to the declaration counting on the subscriptions.

2. CORPORATIONS — NOTES GIVEN FOR STOCK NOT VOID BECAUSE CORPORATION NOT IN EXISTENCE WHEN SIGNED.

Notes and subscriptions for corporate stock are not a nullity because the corporation was not in existence when they were signed, where it was not intended that they should be binding until the corporation became a fact and the conditions were met by those who were promoting it.

[1] Appeal and Error, 4 C. J. § 2757; Pleading, 31 Cyc. pp. 399, 415; [2] Corporations, 14 C. J. § 861.

3. RAILROADS—STOCK NOT SUBJECT TO BLUE SKY LAW—SUBSCRIP-
TIONS TO STOCK NOT APPROVED BY RAILROAD COMMISSION NOT
VOID.

> The securities of public utilities being exempted from the
> operation of the blue sky law (3 Comp. Laws 1915, §
> 11947), subscriptions to the stock of a railroad company
> are not void because said stock had not been approved by
> the securities commission, nor are they void because, when
> taken, it had not been approved by the railroad commis-
> sion, 2 Comp. Laws 1915, § 8161, the applicable statute,
> not inhibiting the taking of subscriptions for such stock
> as is the case in the blue sky law.

Error to Leelanau; Gilbert (Parm C.), J.    Sub-
mitted April 8, 1927.    (Docket No. 66.)    Decided
June 6, 1927.

Assumpsit by the Leelanau Transit Company against
John Houdek and another for the amount of subscrip-
tions for capital stock.    Judgment for plaintiff on a
directed verdict.    Defendants bring error.    Affirmed.

*J. J. Tweddle* and *Fred H. Pratt,* for appellants.

*C. H. Thomas* (*C. L. Dayton,* of counsel), for ap-
pellee.

FELLOWS, J.    The Traverse City, Leelanau & Man-
istee Railroad Company owned a railroad less than 25
miles long, running from Hatch's crossing in Grand
Traverse county to Northport in Leelanau county.    It
was not a paying proposition and its abandonment was
contemplated.    In the spring of 1919 the merchants
and farmers served by it conceived the organization
of a new company to take it over.    Plaintiff was or-
ganized as such company.    Before the organization of
the corporation was completed those interested solicited
subscriptions for the stock.    Each defendant signed
a subscription for the stock and at the same time

[a]Licenses, 37 C. J. § 169; 15 A. L. R. 262; 24 A. L. R. 523;
27 A. L. R. 1169; 40 A. L. R. 1005; 5 R. C. L. Supp. 412; 6 R.
C. L. Supp. 454.

executed a note reciting that it was given for the purchase price of stock of the corporation conditioned that plaintiff's organization should be completed within 120 days. This was done, the public utilities commission, then recently created as the successor of the Michigan railroad commission, authorized the issuance of the stock and the road has been in operation since. Suit was instituted against each defendant but they were heard together resulting in judgments for plaintiff. The original declaration counted on the notes, but an amendment counting on the subscriptions was allowed on the trial.

It was and is insisted that this amendment should not have been allowed. But we are persuaded that it was within the discretion of the trial judge and that such discretion was not abused. The note was the evidence of the debt and recited the consideration to be the purchase price of the stock on that occasion subscribed for. It was all involved in one transaction, and, if necessary, the amendment was properly allowed.

But it is insisted that when the subscriptions and notes were signed there was no corporation in existence, and that, therefore, both the notes and subscriptions were a nullity. As we have pointed out, the notes recited the consideration to be the purchase price of the stock which was then subscribed for. This objection is answered by the recent case of *Hart Potato Growers Ass'n* v. *Greiner*, 236 Mich. 638, where a like contention was made. It was there said by Mr. Justice McDONALD, speaking for the court:

"It is true that the so-called contract did not become binding and operative when the defendant signed it. It was not intended that it should. In fact, it was not a contract at all, but merely an open and continuing offer which ripened into a contract when the conditions were met by those who were promoting the plaintiff company."

It was definitely urged in the court below that because the stock of plaintiff had not then been approved by the Michigan securities commission, the subscriptions and notes were void, and *Edward* v. *Ioor*, 205 Mich. 617 (15 A. L. R. 256), and the cases which have followed it are relied upon. But the plaintiff corporation is a public utility, organized to operate a railroad, and its securities are exempted from the operation of the blue sky law (3 Comp. Laws 1915, § 11947). It is somewhat hazy on this record whether defendants urged in the court below that the subscriptions for stock were invalid because the issuance of the stock had not at the time the subscriptions were signed been authorized by the Michigan railroad commission. But be that as it may, such claim would not be tenable. It will be noted that public utility corporations are inhibited from issuing their securities until they are validated by the Michigan railroad commission (2 Comp. Laws 1915, § 8161). They are not inhibited from taking subscriptions for such securities, while in the case of investment companies they are by the terms of the blue sky law (3 Comp. Laws 1915, § 11958) inhibited from taking subscriptions for such securities. In the one case the taking of subscriptions does not violate the statute, in the other case it does. Hence the doctrine of *Edward* v. *Ioor, supra,* is not applicable to the instant case.

In defendants' notice a claim of fraud was set up. It was not established by the proof and we do not understand it is here urged.

The judgment will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.