# Germann et al. v. Farmers Tobacco Warehouse Co. of Danville.

(Decided June 21, 1935.)

HENRY JACKSON and ADD LANIER for appellants.

M. CARLISLE MINOR for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The point for decision is whether a solvent corporation with the consent of all its stockholders and creditors may purchase a portion of its own stock for the purpose of retirement and reducing its capital.

The Farmers Tobacco Warehouse Company of

Danville is a Kentucky corporation having but few stockholders. Because of dissension regarding management. a contract was made by the directors and three of the stockholders whereby it was agreed that for the conveyance of certain property and the payment of $3,000 the appellants sold to the company 155 shares of its stock. This was approved and consented to in writing by all the stockholders and its creditors. By appropriate resolution the stockholders voted to cancel this stock and thereby reduce the capital by $15,500. The company has and will continue to have a substantial surplus after consummation. Some doubt existing as to the validity of the transaction because of the statutory inhibition of a domestic corporation acquiring its own stock, a declaration of rights was asked. The circuit court adjudged the transaction legal.

In accordance with the rule generally prevailing in America, although not in England, it was held under the common law of this state that a corporation could acquire a portion of its own capital if done in good faith and unless it was injurious either to the stockholders or the creditors. Price v. Pine Mountain Iron & Coal Co., 32 S. W. 267, 17 Ky. Law Rep. 865; 14A C. J. 275. The matter is now controlled by the statute. Section 544 provides that no corporation shall take as security for a debt any lien upon any part of its capital stock or be the holder or purchaser thereof unless it be necessary to prevent loss upon a debt previously contracted. In Merchants' Wholesale Grocery Co. v. Bond-Foley Lumber Co., 222 Ky. 320, 321, 300 S. W. 872, we construed this statute as invalidating an agreement of a corporation to accept its own stock in satisfaction of an indebtedness. But it has not been construed in connection with facts similar or analogous to those present.

We think under the circumstances and for the purpose here presented, this section 544 must be considered in connection with section 553 of the Statutes expressly authorizing a corporation to reduce its capital stock by the vote or written consent of its stockholders representing two-thirds of its capital stock. The manner or method by which the reduction may be made is not specified. Cf. Ecker v. Kentucky Refining Co., 144 Ky. 264, 138 S. W. 264.

There is sharp conflict among the authorities on

the question generally whether in the absence of a statute or charter power a corporation may employ its assets for the purchase of shares of its own stock. Section 2845, Fletcher's Cyclopedia of the Law of Corporations. And this extends to the purchase for retirement. Id., sec. 2847. But the conflict in the matter of power to acquire stock becomes unimportant to us in view of our restrictive statute, which, it may be said, is not peculiar to Kentucky. 6 Fletcher, sec. 2852. Likewise the conflict among the decisions where there was a mere purchase without specific cancellation. 6 Fletcher, sec. 2860. It is laid down in 11 Fletcher, sec. 5148:

> "It is the majority rule that the purchase or acquisition of its own shares by the corporation is not in itself a reduction of the capital stock but that whether or not it has that effect depends on the circumstances and intent with which the shares are acquired."

It is stated in 14A C. J. 278 that some decisions hold the general rules in this regard are not inflexible and that even where the power to acquire its own stock is in general denied, each decision depends on its own facts. Cases cited in the notes as holding the purchase of the shares not permissible as a method of reducing the capital stock indicate the control of a statute or the absence of authority to decrease the capital or that there was a mere purchase without cancellation. 14 C. J. 492; 14A C. J. 276.

The financial condition of the corporation, the purpose and consequences of the purchase, and the unanimity of all concerned in the matter makes the case different from the cases found in the books holding transactions involving the acquisition of the stock by a corporation to be invalid upon various grounds. So reference to them by way of distinction may be avoided. But we may note particularly two cases more or less applicable, and sustaining the right.

While it appears that there was no provision in the Wisconsin statutes forbidding a corporation to purchase its own stock, in Shoemaker v. Washburn Lumber Co., 97 Wis. 585, 73 N. W. 333, a purchase by a solvent corporation, by vote of its stockholders, of its own stock for the pro rata part of its assets was held valid, since

there was nothing to indicate a want of good faith and the corporation was authorized by statute to diminish its capital stock.

A New York statute (Laws N. Y. 1909, c. 61 [Consol. Laws 1909, c. 59, sec. 28]) forbade a corporation to "divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its corporate stock, except as authorized by law." Dissensions having arisen among the stockholders, the corporation with the consent of all of them bought the shares of some in order to effect a settlement and terminate pending litigation. Afterward it went into bankruptcy and the vendors filed claims for the unpaid balance of the purchase price of their stock. The court held in Re Castle Braid Co. (D. C.) 145 F. 224, that with the assent of its stockholders, a solvent corporation could use its capital funds to purchase its stock where it was in good faith and there was no fraud or unfairness.

Returning to our statutes. The provisions of section 544 absolutely prohibiting a corporation acquiring its own stock, except for the one purpose and then only to be held temporarily, would seem, under a rule of statutory construction often applied, that it could acquire it for no other purpose whatsoever. An examination of the journals of the Legislature at the session at which the general corporation law was enacted (of which this is a part) throws no light upon the legislative intent. But it would appear that its mind was to protect the creditors and stockholders against injustice and danger that might arise from a corporation trafficking in its own shares, and that it was not intended as a limitation upon the power or means of reducing the capital when there could be no injurious consequence and the transaction was unanimously approved by all of those who could in any way be affected. As stated, our statute authorizing a reduction in the capital stock prescribes no procedure or means by which it shall be done or accomplished. Here the corporation does not acquire or become the holder of the stock in the sense in which those terms are used in section 544. It is simply passing out of existence with a resulting reduction in the capital stock.

Confining the decision strictly to the facts of the

case at bar, we concur in the conclusion of validity of the transaction reached by the trial judge.

Judgment affirmed.