## BIL-GEL COMPANY *v.* THOMA.

1. CORPORATIONS—PREINCORPORATION CONTRACTS—NAMES.

    Preincorporation agreement of plaintiff corporation to purchase stock of defendant corporation was not a nullity merely because name of plaintiff corporation in the agreement ended with the abbreviation "Inc." and articles of incorporation filed omitted such abbreviation, there being no fraudulent intent involved and no appellant deceived.

2. NAMES—IDENTITY OF MISNAMED PERSON.

    The misnomer of a person or corporation in a written instrument will not defeat a recovery thereon if the identity sufficiently appears from the name employed in the writing or is satisfactorily established by proof.

3. SPECIFIC PERFORMANCE—PREINCORPORATION CONTRACT.

    Plaintiff corporation, in whose behalf preincorporation agreement had been made for purchase of defendant corporation's stock was entitled to invoke equity jurisdiction for specific enforcement thereof, where obligations imposed by the agreement were carried out, such as making of initial deposit on purchase price, articles of incorporation were duly filed before receipt of abstract by plaintiff, deposit was retained and negotiations carried on in an attempt to fix a mutually satisfactory date for closing the transaction, there being no support in record to appellants' claim of fraud on part of plaintiff, its promoters, incorporators and representatives.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 13 Am Jur, Corporations § 133.
[3, 4] 13 Am Jur, Corporations § 108 *et seq.*
[5–7, 9, 10] 12 Am Jur, Contracts § 27.
[11] 13 Am Jur, Corporations § 224 *et seq.*
[12] 13 Am Jur, Corporations § 329 *et seq.*
[13] 12 Am Jur, Contracts § 306 *et seq.*
[14] 19 Am Jur, Equity §§ 417, 420, 422; 49 Am Jur, Specific Performance § 179.

4. CORPORATIONS—PREINCORPORATION CONTRACTS—STATUTES.

The statutory provision which permits the making of valid preincorporation contracts, abrogated the common-law rule to the effect that promoters may make no contract in behalf of a proposed corporation, such contract, by adoption, becoming a contract exclusively between the newly-formed corporation and the other party or parties to the agreement (CL 1948, § 450.8).

5. CONTRACTS—OPTION—DEFINITION.

An option is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, or under, or on compliance with, certain terms and conditions, or which gives to the owner of the property the right to sell or demand sale.

6. SAME—OPTION.

An option is not of itself a purchase, but merely secures the privilege to buy, has the distinguishing characteristic that it imposes no binding obligation on the person holding the option, aside from the consideration for the offer.

7. SAME—OPTION.

An option is not a contract, properly speaking, until acceptance of the offer contained therein but vests in the optionee the right or privilege of accepting the offer and buying the property on certain terms.

8. SAME—DELIVERY—BAILMENT.

The delivery of goods to an optionee is a mere bailment until the option is exercised.

9. SAME—OPTION.

An option contract involves an offer to sell which does not become a contract until accepted and the completed contract to leave the offer open for a specified time.

10. SAME—OPTIONS—MUTUALITY OF OBLIGATION—PREINCORPORATION AGREEMENT AS TO PURCHASE OF STOCK OF CORPORATION.

Preincorporation instrument whereby plaintiff corporation agreed to buy, and individual defendants agreed to sell, the stock of defendant corporation at a given price per share, partly for cash and balance by promissory notes to be secured by a pledge of plaintiff's stock, with down payment to be held by defendant corporation's treasurer until deal was closed, and right of access was given to defendant corporation's properties, inventories, books, and records, *held*, a contract and not an option, there being nothing to indicate that any of

the parties had an election with reference to completing the sale and purchase and sufficient to show the parties treated it as an agreement and sufficient to establish mutuality of obligation.

11. SAME—CHECKS—DEPOSIT ON PURCHASE OF STOCK.

Notation on certified checks that they should not be deposited until completion of sale did not prejudice the defendants nor destroy the effectiveness of the checks as compliance with plaintiff's obligation to make the deposit required for purchase of the stock of defendant corporation, where defendants retained the checks until the trial and purchase agreement provided the proceeds were not to be distributed until the deal was closed.

12. CORPORATIONS—SALE OF STOCK—ESTOPPEL—LACK OF SIGNATURES TO CONTRACT.

Defendant stockholders of defendant corporation are not in position to raise question as to lack of 2 stockholders' signatures on agreement to sell all of stock of defendant corporation, where such stockholders delivered their share, properly indorsed, to another stockholder to be turned over when deal was closed, notice thereof was given to plaintiff purchaser, and defendants did not refuse to perform their undertaking on ground that such signatures had not been affixed.

13. CONTRACTS—SALE OF CORPORATE STOCK—CLOSING OF DEAL—DELAY—TIME.

Claim that because transaction for sale of corporate stock of defendant was not closed within 15 days after it had delivered abstract to plaintiff, as required by contract of sale, that all rights under the contract terminated was untenable, where it was defendant stockholders who deliberately failed to meet for purpose of closing the deal and time of closing was not of the essence of the agreement.

14. SPECIFIC PERFORMANCE—RESERVATION OF JURISDICTION.

Decree of trial court ordering specific performance of sale of stock and reserving jurisdiction in the court to construe the decree and protect rights of the parties thereunder renders it unnecessary to consider modifications of decree in order to cover matters in question.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted April 5, 1956. (Docket No. 29, Calendar No. 46,616.) Decided May 14, 1956.

Bill by Bil-Gel Co., Inc., a Michigan corporation, against Ross B. Thoma, Marie B. Thoma, A. E. Nettleton, James J. Cullen, Pearl Cullen, Highland Merchandising Co., a Delaware corporation, and 10 other stockholders thereof for specific performance of contract for sale and purchase of corporate stock. Decree for plaintiff. The above-named defendants appeal. Affirmed and remanded.

*Butzel, Levin, Winston & Quint,* for plaintiff.

*Harry S. Toy* and *Charles S. Toy,* for appealing defendants.

CARR, J. Plaintiff in this case seeks the specific performance of an alleged contract for the sale and purchase of corporate stock. During the summer of 1953, and, inferentially, for some time prior thereto, defendant Highland Merchandising Company was engaged in the business of selling merchandise at retail from door to door, making collections in like manner. The individual defendants were the stockholders of said corporation. Certain persons desired to purchase the stock on behalf of a corporation to be formed for the purpose of carrying on the business, and entered into negotiations with defendants for the making of such purchase. It was finally agreed, as claimed on behalf of plaintiff, that defendants would sell their stock for $200 per share, each stockholder to be paid partly in cash and partly by a promissory note to be executed by plaintiff, such notes to be secured by a pledge of stock.

The undertaking was reduced to writing, which in terms provided that the individual defendants agreed to sell, and the plaintiff agreed to buy, all the outstanding shares of stock in the Highland Merchandising Company. The sellers, among other warranties expressly set forth, represented that

each was the owner of, and had the right to sell, the stock standing in his name, as set forth in an incorporated schedule. The plaintiff as purchaser undertook to make payment for the stock in the form of cashier's, or certified, checks and by the giving of the notes above mentioned. The down payment specified was to be held by the treasurer of the Highland Merchandising Company for the benefit of all sellers until the time of closing the transaction. The purchaser and its representatives were given the right of access, prior to the closing of the sale, to the corporation properties, inventories, books and records. It was further required that defendants should furnish to the attorney for the purchaser an abstract showing marketable title to certain real estate owned by defendant corporation. Provisions were also inserted in the undertaking for the delivery of books, records, and other documents generally. The writing specified that the transaction should be closed within 15 days after delivery of the abstract, but no definite time was fixed for such delivery.

The articles of incorporation of the plaintiff were executed by the incorporators on the 1st of August, 1953. The name of plaintiff was therein stated as "Bil-Gel Co." Its purposes were enumerated as the buying and selling of personal property, and the owning and holding of stock in companies engaged in similar businesses. The location of its registered office was the place of business of Highland Merchandising Company. The articles of incorporation were filed with the Michigan corporation and securities commission on September 23, 1953, and 2 days later in the office of the county clerk of Wayne county. The written undertaking, above referred to, was dated on the 4th of September preceding.

The abstract that defendants were required to furnish was delivered to plaintiff's attorney on September 25, 1953. Shortly thereafter plaintiff's representatives undertook to have a meeting of the parties in interest on October 10th following. Such date was not agreeable to defendants Pool and Thoma, who together owned 377 shares of the outstanding 770 shares of the Highland Merchandising Company. Accordingly arrangements were made to meet at the office of plaintiff's attorney on October 15th, following, and the testimony in the record before us justifies the conclusion that defendants accepted that date for closing the transaction. However, some of them, including defendants Thoma and Pool, did not appear. Defendants Finnegan, Nettleton and Cullen, who owned an aggregate of 63 shares, were also absent, although it appears that defendant Finnegan was willing to go through with the transaction. Defendants appearing were willing to carry out their undertaking, but because the meeting was not attended by the holders of a majority of the stock no action was taken. It being evident that certain of the defendants did not intend to close the transaction, plaintiff, under date of October 30, 1953, instituted the present suit. Defendants Pool could not be served within the State, and apparently the case was subsequently discontinued as to them.

On behalf of defendants Thoma, Nettleton and Highland Merchandising Company, a motion to dismiss the bill of complaint was made on the grounds that on the date of the written undertaking between the parties the articles of incorporation of the plaintiff had not been filed as required by law, and that the business address of plaintiff was fraudulently stated as identical with the place of business of the Highland Merchandising Company. Said motion

was denied, and the trial court granted a temporary restraining order forbidding the individual defendants from disposing of their stock, and, also, prohibiting the corporate defendant from making stock transfers on its books, from paying dividends, and from selling or disposing of its assets.

Those defendants who were willing to complete the transaction with the plaintiff filed answers indicating their position in that regard. Defendants Thoma, Nettleton and Highland Merchandising Company, filed their answer to the bill of complaint denying plaintiff's right to the relief sought, and defendants Cullen did likewise. On the hearing in circuit court proofs were taken from which the trial judge determined the factual issues presented in favor of the plaintiff, holding that it was entitled to the relief sought as against the defendants other than Clarence H. Pool and Mary A. Pool. A decree was entered in accordance with the opinion of the court, and defendants Thoma, Nettleton, Cullen and Highland Merchandising Company have appealed.

On behalf of appellants it is argued that the undertaking of the parties dated September 4, 1953, was actually a nullity because the articles of incorporation of Bil-Gel Company had not on that date been filed in the office of the corporation and securities commission of the State. Under the record there is no question but that the negotiations for the purchase of the corporate stock of the Highland Merchandising Company were conducted for the benefit of the corporation that the parties seeking to negotiate the purchase intended to form. In accordance with their plan the articles were duly prepared and executed. The agreement was made on behalf of the corporation therein named. The fact that it was described in the written instrument as Bil-Gel Co., Inc., and that the abbreviation "Inc." was omitted from the corporate name as set forth

in the articles is immaterial. It does not appear that any fraudulent intent was involved or that these appellants, or any of them, were in any way deceived. The record fully justifies the conclusion that they at all times understood with whom they were dealing. In considering a similar question this Court in *St. Matthew's Evangelical Lutheran Church* v. *United States Fidelity & Guaranty Co.*, 222 Mich 256, 262, said:

"Defendant then knew, perfectly well, for whom and to whom it engaged its suretyship and it is too late now to insist there is a want of identity arising out of variance in names. The identity of plaintiff and that of defendant's principal in the bond could not possibly have been in doubt at any time by any of the parties, and such identity is not in doubt now. It is an old rule, and a sensible one, that the misnomer of a person or corporation in a written instrument will not defeat a recovery thereon, if the identity sufficiently appears from the name employed in the writing or is satisfactorily established by proof."

The language quoted is applicable to the situation in the case at bar.

The fact that plaintiff's articles of incorporation had not been filed on the day that the written undertaking was executed did not render void what the parties obviously sought to accomplish. The abstract that defendants were required to furnish was delivered to plaintiff's attorney after the articles were duly filed, certified checks covering the initial deposit on the purchase price of the stock were retained by defendants, and negotiations were carried on in an attempt to fix a mutually satisfactory date for closing the transaction. There is no basis for any claim that appellants were deceived or prejudiced because of delay in filing plaintiff's articles of incorporation. We find no support in the record be-

fore us for the allegations of defendants' answers in effect asserting fraud on the part of plaintiff, its promoters, incorporators and representatives. There is no question as to plaintiff's status after the filing of its articles, nor as to its right to invoke the jurisdiction of the court of equity.

The status of preincorporation contracts in Michigan is indicated by the provisions of section 8 of the general corporation act,* CL 1948, § 450.8 (Stat Ann § 21.8) which reads as follows:

"Preincorporation contracts. No contract made by the incorporators for or on behalf of any corporation to be formed preliminary to the filing of the articles shall be deemed to be invalid or ineffectual because made prior to such filing, and all property held by such incorporators for the benefit of the proposed corporation shall be deemed to be the property of such corporation."

Said section was quoted in *In re Montreuil's Estate,* 291 Mich 582, 586, where it was said:

"This statute enables the incorporators to make valid contracts, 'for or on behalf of any corporation to be formed preliminary to the filing of the articles,' and abrogates the common-law rule invoked by plaintiff to the effect that promoters may make no contract in behalf of a proposed corporation. Under this statute the order in behalf of the contemplated corporation, upon organization of such corporation, by adoption and the acts of the parties, became a contract exclusively between such corporation and plaintiff."

See, also, *Leelanau Transit Co.* v. *Houdek,* 239 Mich 101. Appellants' claim that the undertaking of September 4, 1953, was a nullity because of the fact that plaintiff's articles were filed after said date is not well-founded.

---

* PA 1931, No 327, as amended (CL 1948, § 450.1 *et seq.,* as amended [Stat Ann § 21.1 *et seq.,* as amended]).

It is urged on behalf of appellants that the written undertaking on the basis of which plaintiff seeks relief was merely an option rather than a contract. The trial judge held that the language of the instrument in question was not consistent with such claim. We agree with his conclusion. We do not have here a situation in which a mere offer to purchase, or to sell, has been made. On the contrary, the individual defendants, warranting that they were the owners of the stock standing in their respective names, agreed to sell it to plaintiff for a fixed sum. Plaintiff agreed to purchase and to make payment in the manner set forth in the undertaking of the parties. There is nothing to indicate that said parties, or any of them, had an election with reference to completing the sale and purchase.

The writing specified with particularity the steps that should be taken, requiring the furnishing of an abstract, and the closing of the transaction thereafter. It provided also for the giving of security for the payment of the notes executed and delivered in part payment for the stock. Restrictions were set forth with reference to the payment of dividends by the Highland Merchandising Company. Throughout the undertaking we find plaintiff referred to as the purchaser and defendants as the sellers. In the concluding paragraph it was declared that:

"This agreement shall inure to the benefits and shall bind the parties hereto, their heirs, legal representatives, successors and assigns."

It thus appears that the parties themselves designated the instrument as an agreement rather than as an option. Likewise, in exhibit 3, which was a modification of the original contract in the form of a letter sent by the individual defendants to plaintiff with reference to the pledging of the stock, the reference is "to that certain agreement to sell stock

dated the 4th day of September, 1953, executed between your company as purchaser and the undersigned as sellers."

In 77 CJS, Sales, § 33, pp 651, 652, it is said:

"An *option*, as used in the law of sales, is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, or under, or on compliance with, certain terms and conditions, or which gives to the owner of the property the right to sell or demand sale. It is also sometimes called a 'refusal,' or an 'unaccepted offer.'

"An option is not of itself a purchase, but merely secures the privilege to buy. Its distinguishing characteristic is that it imposes no binding obligation on the person holding the option, aside from the consideration for the offer. Until acceptance it is not, properly speaking, a contract, and does not vest, transfer, or agree to transfer, any title to, or interest or right in, the subject matter, but is merely a contract by which the owner of property gives the optionee the right or privilege of accepting the offer and buying the property on certain terms; and until the option is exercised the delivery of the goods to the optionee is a mere bailment, as discussed in Bailments, § 3.c[d?].

"*Elements.* An option contract involves 2 distinct elements, that is, the offer to sell, which does not become a contract until accepted; and the completed contract to leave the offer open for a specified time."

The description of an option as set forth in the foregoing language, which is supported by numerous citations, is scarcely applicable to the undertaking into which the parties to this suit entered on September 4, 1953. This is not a situation in which an offer to buy, or to sell, has been made. It does not vest in either party a mere privilege concern-

ing the exercise of which it, or they, have an election. It follows that cases cited by counsel for appellants with reference to options are not applicable. Rather, the validity and enforceability of the agreement on which plaintiff relies rests on principles of general contract law.

It is further claimed by appellants that plaintiff is not entitled to specific performance on the ground that the undertaking of September 4, 1953, if construed as a contract, is lacking in mutuality. Reliance is placed on the generally recognized rule that a court of equity will not grant the relief in question unless the rights, obligations, and remedies of the parties are mutual in character. The argument apparently rests in the instant case on the theory that if plaintiff had refused to perform the obligation assumed by it with reference to the purchase of the stock defendants could not have maintained an action to compel performance by way of payment. Under the circumstances present here we think such theory is not tenable. Plaintiff assumed an obligation to buy the shares of stock held by each appellant, as well as the stock of the other defendants in the case. It was bound accordingly, and had it refused to perform its promises defendants might have pursued their remedy accordingly, had they so desired.

In support of the argument counsel rely on *Harmon* v. *Muirhead*, 247 Mich 614. However, the contract there involved provided that if the vendors failed to establish satisfactory title to the property within a specified time the vendee should have the right to cancel the agreement and to have a return of his deposit. Merchantable title was not established. It was accordingly held that under the circumstances plaintiff had an election to be bound or not to be bound, and that there was no such mutu-

ality of obligation and of remedy as to entitle plaintiff to specific performance.

Likewise, in *Linden* v. *Hoshal,* 307 Mich 568, also cited by appellants, the facts were materially different than those presented in the case at bar. There the subject matter of the litigation was an alleged oral contract between 2 physicians who had been practicing their profession as copartners. On the breaking out of the Second World War they concluded that one of them, at least, would be required to serve in the army medical corps. Accordingly it was agreed that the partner remaining in the practice should pay to the other 25% of the net income received. Plaintiff made application for a commission in the medical corps, which application was granted, and thereafter he discontinued his practice. The suit was for specific performance of the oral agreement. The court held that the remedy of specific performance was not appropriate, inferentially because equity could not require defendant to continue in the practice of medicine. The contract was held valid, however, and the Court found that plaintiff was entitled to an accounting. In the case at bar there is no analogous reason precluding the granting of specific performance. The claim of a lack of mutuality of either obligation or of remedy is without merit.

The initial deposit of $10,000 required to be made by plaintiff was in the form of 2 certified checks, drawn on a Detroit bank, and duly delivered. Each carried a notation that it should not be deposited until completion of sale. Appellants claim, in substance, that such notation affected the character of each instrument in such manner as to prevent it being regarded as a check in the proper sense of the term. It appears that said checks were delivered to defendant Raymond B. Platz, and subsequently submitted to other stockholders, including

appellant Ross B. Thoma. No complaint was made as to their form. Following examination by other defendants they were returned to Platz and he retained them until the trial. It is apparent that the notation on each check did not in any way prejudice the appellants. Furthermore, it was in accord with the agreement between the parties which specifically provided that the down payment of $10,000 should be held by Platz and not distributed to the sellers until the time of closing the transaction. We find no basis for the claim of appellants that plaintiff did not properly perform its obligation under the contract with reference to the initial deposit required to be made by it in payment for the stock.

Defendants Cullen, who owned 1 share of stock in Highland Merchandising Company, did not sign the agreement of September 4, 1953. No reason for such failure is made to appear. It is in evidence, however, that the arrangement was satisfactory to them and that they delivered their share of stock, properly indorsed, to defendant Ross B. Thoma to be turned over, in accordance with the agreement, on the closing of the transaction. Plaintiff's secretary was notified of such action, and apparently the parties concerned considered that Mr. and Mrs. Cullen had subjected themselves to the terms of the contract. It is significant that the appellants did not refuse to perform their undertaking on the ground that defendants Cullen had not affixed their signatures with the other stockholders. We conclude that they are not in position now to raise the question.

As before noted, the agreement between the parties contained a provision that the transaction should be closed within 15 days after delivery by defendants of the abstract hereinbefore mentioned. Such delivery was made on September 25, 1953. It is the claim of the appellants that the failure to

close on or before October 10th following terminated all rights and obligations under the contract. With such contention we are unable to agree. The trial court found, and the record fully supports such finding, that the failure of the parties to meet for the purpose of completing the deal as contemplated by the agreement was due to the fault of some of the defendants. Plaintiff sought to get the parties together within the 15-day period after the delivery of the abstract, but was unable to do so. The conclusion cannot be avoided that certain of the defendants deliberately sought to delay, and to prevent, the closing of the transaction. The appellants are not now in position to claim any advantage because of such conduct. Further, it may not be said that time of closing was of the essence of the agreement. It will be noted that it was not specifically provided in the written undertaking of the parties that final closing should be had on or before October 10th. Rather, that date was fixed with reference to the delivery of the abstract, and no date was specified for such delivery.

On the record before us we think that the trial judge made a proper disposition of the controversy. It may be noted that the decree entered by him provided for an accounting under the direction of a designated circuit court commissioner of Wayne county and further proceedings with reference thereto. It also reserved jurisdiction in the circuit court to construe the decree, to assure compliance therewith by the parties, and to provide for the protection of the rights of all parties under the agreement. This will enable the court to take such action as may be found necessary to protect and safeguard the rights of the defendants with reference to the security required to be given by plaintiff to insure the payment of the notes to be executed and delivered as part consideration for the stock.

In view of such reservation of jurisdiction, we do not deem it necessary to give consideration to modifications of the decree in order to specifically cover the matters in question.

The decree of the trial court is affirmed, and the case is remanded for further proceedings. Plaintiff may have costs.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.