Owen C. COVEY and Louise C. Moyle, Executors of the Estate of Almon A. Covey, deceased, Appellants (Defendants below),

v.

COVEY'S LITTLE AMERICA, INC., a Wyoming Corporation; Covey Distributing Corporation, a Wyoming Corporation; Covey Oil Company, a Utah Corporation, Appellees (Plaintiffs below).

No. 3076.

Supreme Court of Wyoming.
Jan. 29, 1963.

508

Wilford M. Burton, Salt Lake City, Utah, William S. Edmonds, Kemmerer, and Bard Ferrall, of Ferrall, Bloomfield, Osborn & Lynch, Cheyenne, for appellants.

Herschler & Case, Kemmerer, and Bushnell, Crandall & Beesley and Dan S. Bushnell, Salt Lake City, Utah, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

In a single action, but by separate counts, the three plaintiffs sought to enforce their respective stock "Buy and Sell" agreements with defendants' decedent and to compel the defendant-executors to convey and transfer to plaintiffs respectively the stock of its own corporation, owned by the deceased at his death. Appellants say the pleadings developed the following issues:

1. Did the agreements of Covey's Little America and Covey Distributing Corporation create options which required the executors to sell decedent's stock to those corporations, respectively?

2. Did the circumstances surrounding the execution of the agreements create only a right of first refusal should the estate of deceased decide to sell?

3. Did plaintiffs each comply with the terms of its agreement so as to be entitled to specific performance?

4. Was compliance with §§ 17–24, and 17–25, W.S.1957 (repealed, ch. 85, § 128, S.L. of Wyoming, 1961) necessary in order to obtain specific performance?

5. Should assets of "Wyoming Operating Company" have been included in determining the book value of Covey's Little America?

6. Was the book value of the corporation determined in accordance with law or the agreements?

The trial being to the court without a jury, it found:

1. The agreements were validly executed by the deceased with full knowledge of their contents;

2. The plaintiffs substantially complied with the terms of the agreements in electing to exercise the options granted and in computing and tendering the amounts to be paid defendants;

3. "The deceased at the time he signed the respective Buy and Sell Agreements was not suffering from mental weakness

nor was the consideration inadequate or inequitable or was [sic] the contracts signed as a result of any breach of any fiduciary relationship to the advantage of any of the parties or its [sic] agents to the agreement and to the detriment of the deceased.";

4. That if there were any defects in the agreements or their terms, defendants were estopped to rely upon them as deceased had ratified, confirmed, and relied thereon to his benefit and to the detriment of the other parties resulting in a substantial change of position by the respective parties;

5. Generally for plaintiffs.

The court then concluded:

1. The contracts were not so indefinite, ambiguous or uncertain as to render them unenforceable;

2. The contracts were not so ambiguous as to require parol evidence to determine the intent of the parties;

3. The contracts were validly entered into and the deceased was not acting under any undue influence or mental weakness and no party or its agent breached any fiduciary relationship.

Thereupon the court gave plaintiffs judgment against defendants, ordering them to deliver to the clerk of court properly executed (for transfer?) certificates representing decedent's shares of stock in plaintiff-companies and directing the clerk to pay to defendants the sums deposited with the clerk by the plaintiffs, in payment therefor.

From this judgment defendants appeal, contending the court's findings are not supported by the evidence or are contrary to the evidence and its conclusions were not correct in law and contrary to the evidence.

More specifically five points or contentions are relied upon which will be stated in the language used by appellants:

"I. IF THE STOCK BUY AND SELL AGREEMENTS (EXHIBITS 1 AND 2) CREATED ANY OPTIONS, THE DEATH OF A STOCKHOLDER ONLY GAVE THE CORPORATION AN OPTION TO PURCHASE IN THE EVENT THE ESTATE OR DEVISEE DETERMINED TO SELL THE STOCK."

Exhibits 1 and 2 executed January 14, 1959, are respectively the agreements to which Covey's Little America, Inc., and Covey Distributing Corporation were parties, and their provisions pertinent to this appeal are practically if not completely identical. They are as follows:

"1. No stockholder shall dispose of or encumber any part of his stock in the corporation except under the following conditions:

"(a) The party desiring to dispose of or encumber his stock must first obtain the written consent of all of the other stockholders.

"(b) In the absence of such written consent no stockholder and no transferee who has received any stock in accordance with the provisions of paragraph 1(a) shall encumber or dispose of all or any part of his stock in the corporation now owned or hereafter acquired by him without first giving to the corporation at least thirty days' written notice by registered mail of his intention to make a disposition of his stock. Within the thirty-day period a meeting of the stockholders shall be called by the corporation upon not less than ten nor more than fifteen days' notice by registered mail and such meeting shall be held at the principal place of business of the corporation during normal business hours. At such meeting all of the stock of the stockholder or transferee desiring to make any such disposition shall be offered for sale and shall be subject to an option to purchase or to retire on the part of the corporation, which option shall be exercised, if at all, at the time of such meeting. The purchase or retirement by the corporation shall be at a price equal to 200 per cent of the book value of such stock as of the last day of the month 60 days preceding the date of the meeting of

the stockholders and such purchase or retirement price shall be payable by cash in the amount of 10 per cent of the purchase price and the balance evidenced by a Promissory Note payable on or before one year after the date of said meeting with interest at the rate of six per cent per annum secured by the stock to be purchased with voting, dividend rights and all rights of ownership in the purchaser.

"2. If all of the stock of the stockholder or transferee desiring to make a disposition thereof is not purchased or retired by the corporation in accordance with the provisions of paragraph 1(b), then the stock not so purchased or retired shall be offered for sale and shall be subject to an option on the part of each of the stockholders to purchase a proportionate share, which option shall be exercised, if at all, at the time of the meeting of the stockholders called pursuant to the provisions of paragraph 1(b). * * *

\* \* \* \* \* \*

"4. Upon the death of any stockholder or transferee the corporation shall have the option to purchase or to retire all of the stock of the deceased stockholder or transferee in accordance with the provisions of paragraph No. 1. This option to purchase or to retire shall apply only to all and not to less than all of such stock and shall be exercised by the corporation by serving written notice upon the legal representative of the estate of the deceased stockholder or his transferee within 30 days after the qualification of such legal representative. The purchase or retirement by the corporation shall be at a price equal to 200 per cent of book value of such stock as of the last day of the month 60 days prior to the month in which the date of the death of the deceased stockholder or transferee occurs and such purchase or retirement price shall be payable in cash in the amount of 10 per cent of the purchase

price and the balance evidenced by a Promissory Note payable on or before one year after the date of the execution of said option secured by the stock to be purchased with voting, dividend rights and all rights of ownership in the purchaser. * * *"

■ Appellants lay great stress upon that portion of paragraphs 4 which states that in the event of death of a stockholder the corporation shall have the option to purchase the stock of the deceased stockholder "in accordance with the provision of paragraph No. 1" of the agreement. Appellants conclude this can only mean the corporation had no option to purchase when a party to the agreement died, but merely gained a right to purchase when and if the estate or heirs of a deceased decided to sell the stock of which the deceased died possessed. If this interpretation is correct an anomalous situation would develop in the event the estate, through its representative, the executor or administrator, decided to dispose of the stock, but the heirs decided not to have the stock sold and elected to take in kind. Of course, the right of possessory control of personal property is not in either the heirs or the next of kin of a decedent, but the right of possession and hence, at least temporarily, control of the personalty is in the personal representative of the deceased. See 26A C.J.S. Descent and Distribution § 69, p. 683.

■ Appellants' interpretation is further complicated by the question, In whom does the title to the stock repose immediately following the death of its owner, as well as the question of the right and duty of such titleholder to carry out any commitments the deceased may have made respecting the stock. According to 33 C.J.S. Executors and Administrators § 299, p. 1341, it is well established that in the absence of a statute to the contrary, the legal title to personal property of which a decedent dies possessed vests in the personal representative. See Seibel v. Bath, 5 Wyo. 409, 423, 40 P. 756, 760. Under that rule the provision in paragraphs 4 requiring the corporations

to serve notice of its election upon the "legal representative of the estate of the deceased stockholder," in order to exercise its option, is both logical and proper, while an interpretation that a deceased person desiring to sell should give "to the corporation at least thirty days' written notice by registered mail of his intention to make a disposition of his stock," as is directed by paragraphs 1, would be nothing short of ridiculous.

In Pacific-Wyoming Oil Co. v. Carter Oil Co., 31 Wyo. 314, 327, 226 P. 193, 197, rehearing denied 31 Wyo. 452, 228 P. 284, the court considered a contract which dealt with rights of the parties upon the occurrence of certain contingencies. In that respect the situation there was much the same as that with which this court is now confronted. Judge Blume, the author of the opinion, said:

"* * * The situation of the parties when the contract was made, its subject-matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and, when these are ascertained, they must prevail over the dry words of the stipulation. * *"

In the same case, when speaking on the subject of the sufficiency of "substantial performance," the court said:

"* * * 'substantial performance' means full performance according to the fair intent of the contract * * *."

and again:

"* * * in the absence of a specific provision in the contract showing a contrary intention, the law considers a condition fully performed when the purpose evidenced by the contract can be said to have been fairly carried out."

Also, in Wyoming Irr. Co. v. Yarnell, 31 Wyo. 120, 127, 223 P. 332, 334, where this court was called upon to review the trial court's interpretation of an agreement containing provisions which in one view might have been considered inconsistent with each other, it was said:

"* * * certainly the parties did not intend to introduce contradictory clauses in their contract."

So now this court will not assume the parties intended any inconsistency between paragraphs 1 and 4, as it is felt the parties believed and intended that each paragraph would be appropriately applied to each of the different circumstances contemplated.

Along the same line the court, in Gibbons v. Metropolitan Life Ins. Co., 62 Ohio App. 280, 23 N.E.2d 662, affirmed 135 Ohio St. 481, 21 N.E.2d 588, held it was necessary to consider all parts of a contract in order to determine the meaning of any particular part as well as the whole contract. 17 C.J.S. Contracts § 297, pp. 710–711, states that individual clauses must be considered in connection with the rest of the agreement and all parts of the writing and every word in it will, if possible, be given effect, citing authorities thereunder as well as in 17 C.J. S. 1962 Supplement, among which are cases from United States courts and those of 31 states. In the same volume at page 713, it is also noted that a construction neutralizing or nullifying one provision should not be adopted if a contract can be construed so as to give effect to all of its provisions; that a construction rendering a provision meaningless should be avoided; and that it should be assumed particular clauses are in a contract for a purpose.

There was no need for paragraphs 4, dealing with the eventuality of death, if procedures identical in all respects with those prescribed in paragraphs 1 were required to be followed. It seems completely clear that the parties by their agreements intended to provide for two distinct contingencies. The first, when a living stockholder wished to dispose of stockholdings in the company; the second, in the event of death of a stockholder. The direction in paragraphs 4 cannot reasonably be understood to mean that the acquisition of the corporations' right

to purchase in the event of death depended upon the same procedures being followed as those required when a stockholder desired to sell during his lifetime. Paragraphs 1 require that a *stockholder* give the *corporation* 30-day written notice of intention to sell. Paragraphs 4 require the *corporation* serve written notice upon the *legal representative* of the estate of the deceased stockholder within 30 days of qualification as such. Under paragraphs 1, the written notice is to be given *to* the corporation *by* the the stockholder. Under paragraphs 4, the written notice is to be given *by* the corporation *to* the personal representative of the estate of the deceased stockholder. If the strict, though strained, interpretation contended for by appellants is given the words "in accordance with the provisions of paragraph No. 1," that direction would become inconsistent with the express provision in paragraphs 4. The rule to be applied in such a circumstance is well expressed in 17 C.J.S. Contracts § 309, pp. 726–727:

> "Where two clauses are inconsistent and conflicting, they must be construed so as to give effect to the intention of the parties as collected from the whole instrument, and apparently conflicting provisions must be reconciled, rather than nullify any, if reconciliation can be effected by any reasonable interpretation, it being necessary for this purpose to consider the entire instrument and the surrounding circumstances." Citing in support numerous cases from 19 state and federal jurisdictions.

Paragraphs 1 also direct that the purchase price of stock to be sold is to be equal to 200 percent of the book value of such stock as of the last day of the month *60 days preceding the date of the meeting of the stockholders,* whereas paragraphs 4 say the purchase price is to be equal to 200 percent of the book value of such stock as of the last day of the month *60 days prior to the month in which the date of death occurs.* Again paragraphs 1 say the part-payment purchase-price note is to be payable *one year after the date of the meeting of the*

*stockholders,* but by paragraphs 4 the payment date of the purchase note is to be *one year after the date of the execution of the option.* These differences bear materially upon the proper application to be given the words "in accordance with the provisions of paragraph No. 1" if the intention of the parties is to prevail.

From testimony and from the agreements themselves, that intention is plainly and unmistakably to provide a method by which the stock of the companies could, in the first instance, be kept in the hands of the Covey family and certain of its then employee-personnel, and, upon death of a stockholder, could be retained by the corporation for the mutual benefit of the remaining stockholders, or if the corporation did not so desire to execute its option then the stock might be retained by those stockholders of the corporation who wanted to purchase stock. The means adopted to accomplish that purpose were twofold: (1) To give the corporations a first right and option to acquire the holdings of stockholders who might *desire* to dispose of their stock, and, if the corporation did not elect to buy, then to give stockholders a similar option; and (2) to grant the corporations a first option to acquire the stockholdings of a stockholder who died, and, if the corporation did not elect to buy, then to give stockholders a similar option. 17 C.J.S. Contracts § 294, p. 686, points out:

> " * * * The court will endeavor to ascertain the intention of the parties from the whole instrument and the *circumstances attendant on its execution* without regard to whether an ambiguity is patent or latent." (Emphasis supplied.)

Even more so is this true if the writing is not ambiguous. It is also said that greater regard is to be had to the clear intent of the parties than to any particular words which they have used in the expression of their intent. 17 C.J.S. Contracts § 295, p. 693.

"II. EVEN IF THE AGREEMENT IS INTERPRETED TO GIVE THE CORPORATIONS AN AUTOMATIC OPTION ON THE DEATH OF A. A. COVEY, THEY FAILED TO COMPLY WITH THE TERMS OF THE AGREEMENT."

■■ We need not disagree with the general principle of law that the exercise of an option must be strictly complied with nor with authorities cited by counsel in support thereof insofar as they pertain to circumstances which gave rise to those decisions. However the cases cited do not include certain aspects present here. Counsel claim that as the certificate of the certified public accountant who audited the corporations' book accounts contained the words "PREPARED FROM BOOKS AND RECORDS WITHOUT VERIFICATION," and the accountant accompanied the certificate with an explanation of the impracticability of making direct confirmation of trade accounts receivable or inventories and stated no opinion could be expressed as to the fairness of the audit it accompanied, the determination of "book value" prescribed by the agreement had not been made. Appellants also point to the testimony of an expert witness, saying the document was not a certified statement. It was the court's province to examine the instrument and pass upon its character as being the certified statement of book value required. After examination of the exhibit, our conclusion coincides with that of the trial court. The criticized certified document is a substantial compliance with the agreements' requirements which are as follows:

"5. Whenever in this agreement the term 'book value' is used it shall mean the book value of the stock of the corporation as of the applicable date as determined by certified public accountants and such determination when made, certified and delivered to the corporation shall be binding upon the corporation and upon all parties bound by the terms of this agreement. Such determination shall be made in accordance with sound accounting practice."

Appellants argue book value has the definite meaning in law of a value approaching market value, and the purchase-price tender failed to adjust the certified figures to approach market value. But the parties specified the "book value" to be used was that value determined by certified public accountants using sound accounting practices. That definition controls and the evidence entitled the trial court to pass upon its meeting that requirement. Unless the audit omitted items which should have been noticed, the determination made by the certified public accountant substantially conformed to the agreements' provision.

■ Appellants next challenge the manner in which Covey's Little America and Covey's Distributing Corporation exercised their options to purchase stock of the decedent. In so doing, they revert to their theme that the provisions of paragraphs 1 of applicable agreements and not those of paragraphs 4 govern the manner and the time for exercise of the corporations' options. The record discloses, and appellants do not dispute, that the deceased passed away March 11, 1960; that meetings of the Boards of Directors of these corporations were held August 12, 1960, at which resolutions were adopted authorizing company officers to exercise the options to purchase decedent's stock; that at the stockholders' meetings of these plaintiffs, held respectively on August 12 and 13, 1960, the actions of their boards were approved; that on September 30, 1960, defendants were appointed and qualified as executors of the estate of deceased; and that on October 10, 1960, Covey's Little America, Inc., and Covey's Distributing Corporation each gave defendant-executors notice that the companies elected to exercise their options to purchase the stock subject to their respective options and made tender of the purchase price as determined under the formula prescribed by the agreements. The tender was refused, appellants

insisting there was no valid exercise of the option because: (1) The meetings of stockholders at which the elections to exercise the options were approved were not held at the offices of the companies in Wyoming but were held in Utah; and (2) the holding of those meetings in Utah might have made it impossible for some stockholder to attend. Both these objections are met by the undisputed recitations contained in the notices of election, that all outstanding stock of the corporations was represented in person or by proxy with the exception of the stock of which the decedent died possessed. Additionally, all stockholders of outstanding stock of the corporations having a right to participate in the acquisition of the stock in the event the corporations did not exercise their options, signed waivers of the notice of the meetings and consented to the meetings being held at the place indicated and ratified the action taken at the meetings.

■ Appellants also claim that as the stockholders' meetings were not called or held until August 12 or 13, 1960, the options were not timely exercised because decedent died March 11, 1960. Inasmuch as paragraphs 4, which control the manner and time of exercising the options, direct the exercise be made by serving written notice upon the legal representative of the estate of the deceased stockholder within 30 days after the qualification of such legal representative, and that qualification did not occur until September 30, 1960, this complaint of appellants is also robbed of merit.

"III. THE COURT ERRED IN NOT INCLUDING THE ENTITY AND ALL ITS ASSETS KNOWN AS 'WYOMING OPERATING COMPANY' AS ASSETS AND A PART OF THE OPERATION OF COVEY'S LITTLE AMERICA."

■ The business entity referred to as "Wyoming Operating Company" which conducted a retail liquor business licensed by the State of Wyoming appears to have experienced an uncertain existence. Among the exhibits in the record is an unmarked certificate of the secretary of state dated July 5, 1961, showing the Wyoming Operating Company filed its articles of incorporation and qualified on November 20, 1936, to transact business under the laws of the State of Wyoming. The transcript of testimony fails to describe this instrument, as it fails to describe many of the exhibits received in evidence, but merely refers to exhibits by letter without any other explanatory identification. Under such circumstances, we can only surmise from its inclusion with the exhibits in the record that it is a part of one of the instruments which is marked as an exhibit. Other exhibits show that the company made income tax returns as a corporation from 1946 through 1960; and that on April 12, 1946, the governor of this State by proclamation forfeited its certificate of incorporation effective May 23, 1946.

On September 17, 1962, appellants filed in this court an instrument captioned "Statement of Material Facts Pertaining to the Contents of the Record on Appeal Discovered by Attorneys for Appellants, September 12, 1962." It recites appellees' brief was filed March 3, 1962; that an officer of the plaintiff-corporations and others on March 10, 1962, incorporated in Wyoming under the name "Wyoming Operating Company"; that "Upon September 12, 1962, the Director of the Wyoming Liquor Commission, in answer to affiants' inquiry as to the name or style in which the retail liquor business at Covey's Little America, was issued and held, stated in effect: The Board of County Commissioners issued a retail liquor license in 1962 to the corporation Wyoming Holding [sic] Company," for operation in a room at Covey's Little America; and that the names of stockholders of the new "Wyoming Operating Company" were unknown to appellants' attorneys who also were without information as to what was done with the license, liquor inventory, and fixtures previously used in operating a retail liquor business at Covey's Little America and in which appellees ad-

mitted the estate of deceased had a 12 percent interest. Attached to the statement was a certified copy of the corporation's articles of incorporation.

While the information thus exhibited may have bearing with respect to assets of the deceased's estate, it is not a part of the record on appeal before this court and therefore may not be considered. It might not, however, be amiss to observe that in any event the information would seem only to affect the right of deceased's estate to seek an accounting.

A careful examination shows there is definite testimony by qualified witnesses, that the liquor business—whether conducted by the original "Wyoming Operating Company," a corporation, continued in operation under the same name after forfeiture of its articles of incorporation, now being conducted by a new corporation named "Wyoming Operating Company," or whether operated by any other concern—was a completely separate enterprise in itself and not an asset of either of the plaintiffs. The business had its own separate books, paid for its own services, and made its own accountings and returns to governmental instrumentalities. These testimonies are supplemented by exhibits in the record. It is also noted that there is not an identity of stockholders between either of plaintiff-companies and the present or the former group which composed the Wyoming Operating Company venture. The fact that there was identity between some of these persons is insufficient to substantiate appellants' contention in this respect. While on January 14, 1959, deceased became a party to practically identical commitments concerning his stockholdings in two of the plaintiff-corporations with which he was connected, when the oil company was incorporated on November 9, 1959, he saw fit to also make a somewhat similar commitment of his stockholdings in the third plaintiff-corporation. Also the record fails to disclose the deceased was not possessed of other assets which also were not subjected to option commitments. This at least suggests that had deceased intended his holdings in "Wyoming Operating Company" to be committed under an option agreement, he might have done so as he first did with two of his corporate interests and as ten months later he did with a third corporate interest.

"IV. PLAINTIFFS' COVEY'S LITTLE AMERICA, INC., AND COVEY DISTRIBUTING COMPANY [sic] ATTEMPTED TO RETIRE CAPITAL STOCK WITHOUT COMPLYING WITH THE LAWS OF THE STATE OF WYOMING; THE DEFENDANTS ARE NOT BOUND BY SUCH ATTEMPT, AND THE JUDGMENT OF THE COURT IS, THEREFORE, AGAINST THE EVIDENCE AND IS NOT SUSTAINED BY THE EVIDENCE."

 Appellants cite § 17–24, W.S. 1957, relating to procedure in changing amount of capital stock of a corporation, and base their contention under this point upon the erroneous assumption that purchase by a corporation of its own stock is necessarily a reduction or diminishing of its capital stock.

According to majority authority, the test of there being a reduction or diminishing of the capital stock of a corporation is whether the purchase is made with intention to retire the stock. 11 Fletcher Cyclopedia Corporations, § 5148, p. 345 (Perm. Ed.). See also 18 C.J.S. Corporations § 268b, pp. 740–741; A. B. Frank Co. v. Latham, Tex.Civ.App., 190 S.W.2d 739, affirmed 145 Tex. 30, 193 S.W.2d 671; San Antonio Hardware Co. v. Sanger, Tex. Civ.App., 151 S.W. 1104; State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317; Spiegel v. Beacon Participations, 297 Mass. 398, 8 N.E.2d 895; Germann v. Farmers Tobacco Ware House Co. of Danville, 260 Ky. 249, 84 S.W.2d 82. The record is silent on the question of that intention so it is as possible that the company-purchased stock may be reissued as it is that it will not be

reissued. City Bank of Columbus v. Bruce, 17 N.Y. 507, 512; Borg v. International Silver Co., 2 Cir., 11 F.2d 143, affirmed 2 Cir., 11 F.2d 147; and 11 Fletcher Cyclopedia Corporations, § 5148, p. 349 (Perm. Ed.). If it should be reissued, there will be no reduction in the capital stock of the companies. Even should the corporation at a later date decide to permanently retire the stock, only then will proceedings under the cited statute be timely.

## "V. COVEY OIL CORPORATION [sic] FAILED TO EXERCISE OPTION WITHIN THE TIME SPECIFIED IN THE AGREEMENT; THEREFORE, THE OPTION TERMINATED."

This point involves only the separate agreement of plaintiff Covey Oil Company, a Utah corporation, with the defendants' decedent who was among those named therein as one of the parties of the first part. It was not executed until November 9, 1959, and its provisions pertinent to this appeal are somewhat different than corresponding provisions which the other two plaintiffs had with the deceased. They are as follows:

"1. It is understood and agreed that the Parties of the First Part shall not sell, dispose of by gift, inheritance or otherwise, nor pledge, or encumber stock of the corporation now owned or hereafter acquired by any of them without first offering their stock for sale to the corporation or its stockholders pursuant to the terms and conditions hereinafter set forth.

\* \* \* \* \* \*

"3. It is understood that death, insolvency, bankruptcy or assignment for the benefit of creditors of any Party of the First Part [which reference included the deceased] shall be regarded as an event pursuant to which the corporation or its stockholders shall have an option to purchase said stock in accordance with all the terms and conditions hereinafter set forth.

"4. Within thirty days from the happening of the event which binds the Parties of the First Part, or any of them, to offer stock for sale to the corporation, a meeting of all of the stockholders shall be called by the corporation upon not less than fifteen days' notice by registered mail and such meeting shall be held at the principal place of business of the corporation. At such meeting all the stock of each stockholder desiring or bound to offer his stock for sale shall be offered for sale and shall be subject to an option to purchase or retire on the part of the corporation, which option shall be exercised, if at all, at the time of such meeting. \* \* \*

"5. If all the stock of any Part[y] of the First Part who desires or is bound hereby to make disposition thereof is not purchased or retired by the corporation in accordance with the provisions of Section 4 hereof, then the stock not so purchased or retired shall be offered for sale and be subject to an option on the part of each stockholder of the corporation to purchase a proportionate share, which option shall be exercised, if at all, at the time of the meeting of the stockholders called pursuant to the provisions of Section 4. \* \* \*"

Appellants complain that Covey Oil Company failed to hold its meeting within 30 days after March 11, 1960, the date of decedent's death, as is provided above. There is no disagreement but that the death of the appellants' deceased is by paragraph 3 made an event which gave the corporation a first right to exercise its option to purchase all of the decedent's stock in Covey Oil Company, and if that option was not exercised by the company then the agreement gave the stockholders of Covey Oil Company the right to exercise their individual similar options to themselves to purchase the stock in accordance with the provisions of paragraph 4 of the contract. A literal compliance with that portion of

paragraph 4 which says that the subject stock "shall be offered for sale" was, of course, impossible because there was no one in existence within 30 days following the death of the deceased who had authority to offer the stock for sale.

The parties to this option agreement were free to condition its exercise in any lawful manner they desired, but to construe the bare statement that, "At such meeting all the stock of each stockholder desiring *or bound* to offer his stock for sale shall be offered for sale" (Emphasis supplied.), as imposing a precedent condition upon which the corporation's option must depend would be entirely unreasonable.

An option is a continuing offer to sell and, even though it is conditioned for exercise within a limited time, the option is nevertheless an executory, unilateral contract. Braten v. Baker, 78 Wyo. 273, 323 P.2d 929, 931, 325 P.2d 880; Baker v. Coleman, 160 Fla. 297, 34 So.2d 538, 539. See also Maytag Company v. Alward, Iowa, 112 N.W.2d 654, 657; Bil-Gel Company v. Thoma, 345 Mich. 698, 77 N.W.2d 89, 94; and Johnson v. Whitney Metal Tool Co., 342 Ill.App. 258, 96 N.E.2d 372, 377. Its true essence is to give the optionee an absolute right without anything more being done by the optionor. If something further is required in order to bind the optionor, no option is given. The exclusive right to conclude the transaction must be vested solely in the optionee, and the optionor must have no choice but to abide by the terms of the commitment. See Nigh v. Wondra, 167 Kan. 701, 208 P.2d 239; Bil-Gel Company v. Thoma, supra; and Johnson v. Whitney Metal Tool Co., supra.

However options are to be strictly construed and where the option is to be exercised within a stated time and in a particular manner, that must be done exactly as prescribed unless, perhaps, there is some intervening circumstance which the law recognizes as one of the impossibilities which make failure of compliance an exception to the rule. Callisch v. Farnham, 83 Cal.App.2d 427, 188 P.2d 775, 777; Baker v. Coleman, supra.

By the terms of the agreement, it was expressly required that "within thirty days" from the death of the deceased a meeting of all the stockholders should be called to be held at the principal place of business of the corporation, and that the corporation must exercise its option *"if at all, at the time of such meeting"* (Emphasis supplied). This was a mandatory direction which required strict observance insofar as it was within the power of the corporation to comply. Both time and place had special significance, because another option was dependent upon the action then and there taken by the corporation. The "place" requirement, in the sense of its being at a "meeting of all the stockholders," was of importance because the individual stockholders were given option to purchase the stock of the deceased only if the corporation failed to exercise its first option. The time limitation was of the essence inasmuch as the stockholders' option hinged upon the corporation's action at the meeting.

It has been said there are two steps or elements to the exercise of an option: (1) The decision or election to exercise; and (2) the communication of that decision and election within the period limited. See Milner v. Dudrey, 77 Nev. 256, 362 P.2d 439, 443–444. In this matter the decision or election to exercise was required to be made within a definitely limited time and at a specified meeting of the stockholders held within that time. There appears in the record no reason why that meeting could not have been so held. In consequence this requirement for the exercise of the corporate option was not met. This was inexcusable and infringed materially the right of the second optionees to know within 30 days following the death of the deceased whether they could or could not exercise their own option.

At first blush it may be thought that what is said with reference to the Covey

Oil Company agreement should be equally applicable to the contracts of Covey's Little America and Covey Distributing Corporation because all three contracts provide for a meeting of stockholders to be held within 30 days of death, at which meeting the companies must exercise their options "if at all." But the contracts of the last-named companies required their options be exercised in writing served upon the legal representative of the deceased. The manner in which Covey Oil Company's option was to be exercised did not require any such written notice or service. The exercise of the corporate options as required by the first two agreements was rendered impossible by the non-existence of the person to be served. On the other hand the Covey Oil Company's agreement contained no requirement as to the manner of exercising its option. The only action demanded of the oil company was that it make its decision at a meeting of the stockholders held within the time limited by the agreement. More simply stated, the requirements of the Covey's Little America and Covey Distributing Corporation contracts were rendered impossible of fulfillment through no fault of plaintiffs, while nothing impossible of fulfillment was required of Covey Oil Company in order to exercise its option.

To implement what has been said, we hold:

(1) The agreements to which Covey's Little America and Covey Distributing Corporation were parties, granted them express options;

(2) Both Covey's Little America and Covey Distributing Corporation substantially complied with the terms of their option agreements in exercising their rights to purchase the stock of their companies owned by decedent;

(3) Assets of the operation referred to as "Wyoming Operating Company" did not belong to either of the plaintiff-companies;

(4) Covey Oil Company failed to exercise its option for the purchase of the stock of that company owned by the decedent within the time and in the manner required by the agreement.

The judgment of the district court with respect to Covey's Little America and Covey Distributing Corporation is affirmed, but the judgment insofar as it concerns Covey Oil Company is reversed and the district court will enter its judgment according to the views herein expressed.

Affirmed in part and reversed in part with directions.