LIFE & CASUALTY INS. CO. OF TENNESSEE *v.* CITY OF NASHVILLE.

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

P. M. Estes and Sydney F. Keeble, both of Nashville, for plaintiff in error.

E. C. Yokley, Jr., Charles G. Blackard, and W. C. Cherry, all of Nashville, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

The plaintiff, Life and Casualty Insurance Company of Tennessee, sued the defendant City of Nashville, to recover damages to real property as the result of its changing the grade of Demonbreun Street in Nashville. The jury returned a verdict in favor of plaintiff for $500. Plaintiff's motion for a new trial, based upon the inadequacy of the award, was overruled. Thereafter the defendant entered its motion in arrest of judgment upon the ground that the declaration did not state a cause of action. That motion was sustained and the suit dismissed. The Court of Appeals affirmed. This court granted the petition of plaintiff for a writ of *certiorari,* and the case has been argued by counsel at the bar of this court.

The essential facts are as follows: In 1925 the Terminal Realty Company, a Tennessee corporation, was the owner of two adjoining lots located on Tenth Avenue in Nashville. This avenue runs north and south. The southernmost lot abuts on Demonbreun Street, which street runs east and west. In that year the Terminal Realty Company constructed a two-story brick and concrete building on said lots at a cost of $150,000. At the same time it borrowed $200,000 from plaintiff which it secured by a deed of trust on said two lots. In 1933 the City Council of Nashville passed an ordinance authoriz-

ing a bond issue of $150,000 for the purpose of construct-
ing a viaduct in order to extend Demonbreun Street west
across the yards of the Louisville & Nashville Terminal
Company. The bonds were sold and defendant con-
structed this viaduct, completing same some time during
the year 1934, but within less than a year prior to the
bringing of this suit. This viaduct as constructed cut off
ingress and egress to the first story of said building on
Demonbreun Street, and shut out the light and air on the
south side of the building.

In 1935 the Terminal Realty Company defaulted in
meeting its indebtedness to plaintiff, which was $112,750.
The Terminal Realty Company being unable to liquidate
this indebtedness, and in order to obviate a foreclosure of
the mortgage on its property, entered into a contract
with plaintiff under the terms of which it paid plaintiff
$2,750 in cash, conveyed said two lots to it, and assigned
to plaintiff its right of action or claim for the damage
to said property resulting from the construction of said
viaduct. In consideration of the foregoing plaintiff
canceled the entire indebtedness which the Terminal
Realty Company owed it. The assignment of the claim
for damages was contained in the deed conveying the two
lots to plaintiff, and is in this language:

"And there is likewise transferred, conveyed and as-
signed to the said Life and Casualty Insurance Company
of Tennessee, its successors and assigns, all right and
claim that the Terminal Realty Company has, or may
hereafter acquire against the Mayor and City Council
of Nashville for damages to either or both of the above
described tracts on account of the construction of the
Demonbreun Street Viaduct, or any other account."

It will be noted that the grantor assigned its right
and claim against the "Mayor and City Council of Nash-

ville'' instead of against the ''City of Nashville.'' Prior to 1913 the corporate name of this municipality was ''Mayor and City Council of Nashville.'' By Chapter 22, Private Acts of 1913, the corporate name was changed to ''City of Nashville.''

The Court of Appeals and the trial court sustained the defendant's motion in arrest upon the theory that the declaration does not disclose an assignment by the Terminal Realty Company of its right of action against the defendant City of Nashville, or that the plaintiff has acquired title to such right of action in any manner. The authorities in general, including the decisions of this court, are to the contrary.

In 13 Am. Jur., Corporations, page 270, it is said: ''It is the general rule that in case of the misnomer of a corporation in a grant, obligation, written contract, notice, etc., if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the body corporate is well named, although there is a variation of words and syllables.''

The text in 14 C. J., 324, is as follows:

''The general rule therefore is that the mere misnomer of a corporation in a bond, note, or other deed or contract does not render the same invalid or inoperative, but the corporation may sue or be sued thereon in its true name with proper allegation and proof that it is the corporation intended; and its identity may be established by parol evidence. Nor will a grant or conveyance to or by a corporation be invalidated by a misnomer if its identity as the corporation intended is established.''

In *Precious Blood Society* v. *Elsythe*, 102 Tenn., 40, 45, 46, 50 S. W., 759, 760, it is said:

''Under these conditions it is too late, even if the right ever existed, and by the averment just quoted they in-

tended to assert it, for the cross complainants to call in question this deed for misnomer.

"But, without regard to time and character of pleading on this record they cannot do so. The record leaves no doubt that the grantor in this deed is the corporation created by the articles of incorporation. Its identity is put beyond question. This being so, the general concurrence of modern authority is to the effect that a misnomer or variation from the precise name of a corporation in a grant or obligation by it or to it is not material if the identity of the corporation is unmistakable, either from the face of the instrument or from proof and averments." (Citing authorities.) ..

We are referred to *Trustees of McMinn Academy* v. *Reneau*, 32 Tenn. (2 Swan), 94, 99, in which it was stated:

"The misnomer of the corporation is no ground of objection. The first bond is made payable to William Simpson and others, by the description of 'Trustees of the McMinnville Academy, in Hawkins county,' &c., and the corporate name is 'McMinn Academy.' It has been held, and we think properly, that where a deed is made to a corporation, by a name varying from the true name, the plaintiffs may sue in their true name, and aver in the declaration that the defendant made the deed to them, by the name mentioned in the deed. [*Medway Cotton Mfg.* v. *Adams*], 10 Mass., 360 363; [*New York African Soc.* v. *Varick*], 13 Johns., 38; Ang. & Ames on Corp., 584, (third edition.)"

Also to *Bank of Tennessee* v. *Burke and Burke*, 41 Tenn. (1 Cold.), 623, 625, in which it was said:

"The law now is, that a departure from the style of the corporation will not avoid its contracts, if it substantially appear that the particular corporation was intended; and an ambiguity may, under proper averments, be explained

by parol evidence, in this, as in other cases, to show the intention. It was so held in the *Trustees of McMinn Academy* v. *Reneau et al.,* 32 Tenn. (2 Swan), 94."

In that case the suit was begun before a justice of the peace, so that there were no averments with respect to the misnomer. Since it appears without contradiction that the Terminal Realty Company intended to assign to plaintiff its right of action against defendant, we are of opinion, therefore, that plaintiff had a right to prosecute this suit against the City of Nashville. This is a clear case of misnomer, as appears from the uncontroverted evidence.

The question as to the sufficiency of the pleadings in a case of misnomer, such as appears in the present case, presents a different proposition. The sufficiency of the declaration as a pleading was in no wise questioned by defendant. On the other hand it went to trial upon the merits, thereby treating the declaration as stating a good cause of action. The trial court entertained the same view because he charged the jury, as a matter of law, that plaintiff had acquired the right and claim of the Terminal Realty Company against the City of Nashville. No exception was taken to this feature of the charge, and defendant made no request for other or different instructions. All parties treated the assignment as valid. The only plea filed by defendant was that of "not guilty." Such a plea in an action of this character puts in issue two facts, the alleged wrongful act, and the title of the plaintiff: History of a Lawsuit (2 Ed.), 196. As heretofore stated, the plaintiff established its title by uncontroverted testimony. The case was defended only upon the grounds that the property was not damaged, and that plaintiff's predecessor in title had consented to the construction of this viaduct and had thereby, implied-

ly, waived any claim for damages resulting from its construction.

We are further of opinion that the allegations in the petition were sufficient to give defendant notice that it was claiming, by assignment, the right of action which the Terminal Realty Company had against it for damage to its property as a result of the construction of the Demonbreun Street viaduct. In the first place, it sued the City of Nashville. In the second place, it alleged that the damage to this property was committed by the City of Nashville. In the third place, it alleged that the Terminal Realty Company had conveyed the two lots to it, and in the deed had assigned to it is cause of action for damage done to said property as a result of the construction of the viaduct. Counsel concede that if the declaration had averred that in assigning the cause of action against the "Mayor and City Council of Nashville" the Terminal Realty Company intended to assign its cause of action against the "City of Nashville" the declaration would be sufficient. We think that was the reasonable and logical effect of its averments; that counsel for defendant so understood and treated it, and that, in any event, defendant's motion questioning its sufficiency came too late. It may be seriously questioned whether under modern authorities it is necessary in case of a misnomer to affirmative aver that the instrument was made to plaintiff in the name mentioned therein. This is implied from the fact that plaintiff is basing its cause of action thereon, and in order to recover plaintiff has to establish the fact that it was the corporation named in the instrument. The question of title becomes an issue in the case under a plea of the general issue.

For the reasons stated we are of opinion that the other courts were in error in sustaining the motion of defendant in arrest and dismissing the suit.

■ The Court of Appeals, being of opinion that the motion in arrest was conclusive, declined to pass upon the other errors assigned by counsel for plaintiff. In such circumstances this court, were questions of fact are involved, remands the case to the Court of Appeals. Where however as in this case, no questions of fact are involved, but the assignments raise legal questions only and the case has to be remanded to the trial court for a new trial in order to expedite a hearing upon the merits and avoid unnecessary delay, this court will dispose of such questions, all of which relate to errors committed by the trial, court in the admission of evidence and his instructions to the jury.

■ As to the quantum of damage suffered by plaintiff much testimony was introduced, the amount varying from nothing to $40,000. That, however, is a question to be determined by the jury and not by this court.

■ The most serious error of which counsel for plaintiff complain was the introduction before the jury of ordinance No. 3213, enacted by the City Council of Nashville on October 21, 1924. The introduction of this ordinance in evidence was vigorously opposed and excepted to. The essential facts with respect to this ordinance are as follows:

In 1924 Tenth Avenue, South, adjoined and paralleled the yards of the Louisville & Nashville Terminal Company, on which there are many tracks. The two lots in question were located on the east side of Tenth Avenue, South, facing the railroad property.

On October 7, 1924, the Terminal Realty Company submitted a proposition to the City Council of Nashville, in

which all locally interested parties joined, the substance of which was that if the city would close that part of Tenth Avenue lying between its property and that of the Louisville & Nashville Terminal Company and convey same to it, that it would convey to the city a sufficient amount off the eastern part of its property on which to construct a new Tenth Avenue; and it and the other interested parties would pay the cost of constructing the new street. The purpose of this proposal was to enable the Terminal Realty Company to construct its building adjacent to the switchyards of the Louisville & Nashville Terminal Company, so as to make the house tracks of the railroad available to its tenants. This offer was accepted, and Tenth Avenue was changed so as to parallel the Terminal Realty Company property on the east. The building in question was subsequently constructed adjoining said switchyards.

This building was constructed by the Terminal Realty Company pursuant to a contract of lease with the United States Post Office Department for ten years for a rental of $35,000 a year. The lease was duly executed, and having expired in 1935, the lessor was no longer able to pay its indebtedness to plaintiff. The foregoing proposition of the Terminal Realty Company was, in fact, agreed to by the city before it was submitted in writing on October 7, 1924. The first five sections of the involved ordinance incorporate the offer of the Terminal Realty Company and its acceptance by the city without condition, reservation, or change of any kind or character. Section 6 of the ordinance provides:

"That the Louisville and Nashville Terminal Company is hereby given the right to erect and maintain elevator shafts and structures at and upon the locations as shown on the blue print attached to the Terminal Realty Com-

pany's proposal, and which is marked Exhibit No. 2. See amendment No. 1."

That provision had reference to certain elevators used for the purpose of transferring the mail from the railroad property to the upper floor of the Terminal Realty Building, from which the parcel work was to be handled. All of the foregoing was embraced within the proposal of October 7, 1924, and was agreed to by the Louisville & Nashville Terminal Company, the Louisville & Nashville Railroad Company, the Nashville, Chattanooga & St. Louis Railway, and various local property owners who had neighboring interests in the closing of the old and the opening of the new Tenth Avenue. Thereafter, on October 21, 1924, there was proposed by a committee of four councilmen, and attached to the ordinance, the following:

"Provided, however, that the City of Nashville shall have the right and authority to erect and maintain over the yards and tracks of the Louisville & Nashville Terminal Company a viaduct of the full width of Demonbreun Street extended and passing immediately to the south of said structure and elevator shafts, as shown in Exhibit No. 2 aforesaid, should said elevator shafts and structure be tanding and in use at the time said viaduct is built; provided that said bridge shall have a clearance of not less than twenty-two (22) feet above the railroad rails, and that its pillars, posts, piers or supports shall obstruct or interfere as little as practicable with the tracks of the Terminal Company. However, should said structure and shafts be abandoned then this section shall be void and inoperative."

It was strenuously urged by the city that this provision of the ordinance was binding on the Terminal Realty Company, and consequently on plaintiff; and that it

thereby consented to the construction of the viaduct and, impliedly, agreed to waive any claim for damages that it might receive as a result of the construction of the viaduct. To this we are unable to agree. There is nothing of this nature mentioned in the offer of the Terminal Realty Company, which offer was accepted by the city. The name of the Terminal Realty Company is not mentioned in connection with that provision of the ordinance and, as we interpret that feature of the ordinance, it was not a party thereto. What the city council had in mind was that in the future when the city desired to construct this viaduct over the numerous tracks of the Louisville & Nashville Terminal Company it might object, or, at least, put the city to some trouble, expense, and delay in making the improvement, and that this would be a propitious time to have an agreement with the Louisville & Nashville Terminal Company about the matter. This was simply an agreement between the city and the Louisville & Nashville Terminal Company and was not intended to bind the Terminal Realty Company, particularly as to any damage it might suffer as a consequence of the construction of a viaduct. The trial court did not interpret said ordinance as contended by defendant; otherwise he would have dismissed the suit upon that ground. Since this part of the ordinance was not binding on the Terminal Realty Company, or its assignee, we think the court was in error in admitting it in evidence and that it was prejudicial to plaintiff.

For the reasons heretofore stated the first three assignments of error are sustained.

■ Error is assigned on the instruction given the jury to the effect that it is the claim of the city that "the Terminal Realty Company acquired this property and became the owner of the property with knowledge of the

fact that the Demonbreun Street Viaduct was to be built by the city." This instruction conveys an inference that if it possessed such knowledge that it would affect its right to recover for the damage sustained, while, of course, such knowledge does not affect the rights of the property owner in the least. The city had a right to construct the viaduct and the abutting owner had no way to prevent it. Such knowledge is immaterial, and assignment number four is sustained.

Assignment five criticies the charge in that the court said to the jury that if they found that plaintiff had acquired the property described in the declaration from the Terminal Realty Company "for a valuable consideration," etc.

The jury could not have been misled by this statement since the deed and other evidence establish without contradiction that plaintiff paid a valuable consideration for the property. Furthermore, the court had instructed the jury that plaintiff had acquired the right and claim of the Terminal Realty Company against the city for damages.

Complaint is made of the action of the court in declining special request No. 3, tendered by counsel for plaintiff, which is as follows:

"Testimony has been admitted as to properties other than the Terminal Realty Building. This was simply to throw light on the subject. I charge you that the effect of this testimony depends upon the distance of those properties, the character of the surrounding neighborhoods, and the purpose for which they were constructed."

In the absence of a fuller statement relative to the situation to which this request relates, we are unable to say that the court was in error in rejecting it. This re-

quest, so far as we can see, is meaningless.

By the seventh assignment the following excerpt from the charge is criticised:

"The Court further charges you if you should find from the evidence that the property by reason of the building of the Demonbreun Street Viaduct has enhanced the value of the plaintiff's property over and above any incidental damages that may have resulted from the erection of the Demonbreun Street Viaduct, then and in that event it would be your duty to find in favor of the defendant City of Nashville."

Plaintiff complains of the court in characterizing its damages as being "incidental." It is insisted that the court has placed the cart before the horse, since the element of damages is the main issue and the enhancement the incidental feature of the controversy. It would be better to follow the rule announced in *Acker* v. *Knoxville,* 117 Tenn., 224, 96 S. W., 973, to the effect that the proper measure of damages in cases of this character is the difference between the market value just before the grading and just afterwards, with an abatement or offset of incidental benefits accruing to the particular property as a result of the improvement.

For the reasons stated herein the judgments of the Court of Appeals and the Circuit Court will be reversed and the case remanded to the Circuit Court for a new trial.