IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2008 Session

## REALTY CENTER NEW HOMES DIVISION, LLC v. DOWLEN CONSTRUCTION, LLC

**Appeal from the Chancery Court for Hamilton County**
**No. 06-0493      W. Frank Brown, III, Chancellor**

—————————————

**No. E2008-00137-COA-R3-CV - FILED DECEMBER 30, 2008**

—————————————

This is a breach of contract case in which the plaintiff, reflected as "Realty Center New Homes Division, LLC" ("Realty Center"), a real estate broker, sued Dowlen Construction, LLC ("Dowlen"), a builder and developer, for unpaid commissions on sales of real estate. Realty Center signed the contracts at issue in a name slightly different from the name on its real estate broker's license. The trial court held that Realty Center is entitled to commissions, prejudgment interest, and discretionary costs. Dowlen appeals. We hold, in accord with the general rule, that the misnomer in the contracts did not render those documents invalid or inoperative where there was evidence that Dowlen knew the identity of the real party and, in this circumstance, Dowlen was estopped to deny the existence of the entity with which it contracted. We further hold that the Tennessee Real Estate Broker License Act of 1973, Tenn. Code Ann. § 62-13-101 *et seq.* ("the Act") does not expressly require a real estate broker to sign contracts in its licensed name, and we decline Dowlen's invitation to construe the Act to find this requirement. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, SP. J., joined.

Gary D. Lander, Chattanooga, Tennessee, for the appellant, Dowlen Construction, LLC.

John W. Beard and R. Jonathan Guthrie, Chattanooga, Tennessee, for the appellee, Realty Center New Homes Division, LLC.

**OPINION**

I.

Realty Center is a Tennessee limited liability company founded in 1999. It is engaged in the business of marketing and selling new homes. Dowlen is a builder and developer. In May 2005, Realty Center and Dowlen entered into a contract by the terms of which Realty Center had the exclusive right to sell the townhouses that Dowlen was constructing in Amber Brook and Channing Creek subdivisions in Hamilton County. [1]

The May 2005 agreement replaced an earlier agreement dated August 7, 2002. The May 2005 agreement was for a two-year term, but either party to the agreement could cancel it by giving 90 days notice of its intent to do so. The parties agree that the May 2005 contract was terminated on August 12, 2005.

Realty Center filed a complaint using the name "Realty Center New Homes Division, LLC, dba Prudential Realty Center/New Homes Division" – its "licensed" name when it filed suit. [2] The complaint sought commissions due for all sales contracts in existence as of May 5, 2005, and all sales contracts signed between May 5, 2005, and November 12, 2005. [3] In the lawsuit, Realty Center asked for an accounting and damages due to breach of contract and/or quantum meruit and unjust enrichment.

In August 2006, Dowlen filed an answer and counterclaim in which the first defense was that the named plaintiff was not the entity that signed the 2005 contract. In the contract the entity is listed as "Realty Center/GMAC, New Homes Division, LLC."

In December 2006, Dowlen filed its first amended answer and counterclaim. A flurry of pleadings then followed. Dowlen made one claim in its initial counterclaim and two claims in its first amended counterclaim. Dowlen then made three claims in its second amended counterclaim, all revolving around the theory that because Realty Center contracted in a name that slightly varied from the name in which it was licensed, Realty Center was unlicensed and, being unlicensed, it violated several provisions of the Act.

In its brief Dowlen points this court to four defenses it says are "pertinent on appeal." These are:

> The Complaint fails to state a claim upon which relief can be granted in that the contracts described in the Complaint were made with

---

[1] There was also a contract between these parties concerning sales in a development in Sequatchie County, but that contract is not at issue on this appeal.

[2] The complaint was later amended to reflect that the plaintiff is "Realty Center New Homes Division, LLC," the name of the plaintiff shown in the style of this opinion.

[3] This date is the 90th day after notice was given and is thus the alleged ending date of sales contracts subject to the parties' agreement.

Dowlen by an entity called Realty Center/GMAC, New Homes Division, LLC, which is not the Plaintiff, and each contract at issue provided that it is not assignable without the consent of the other party, and the Complaint fails to aver any assignment of the contracts with permission of Dowlen.

The contracts upon which Plaintiff is suing were made by Realty Center/GMAC New Homes Division, LLC. No such person, as defined in [Tenn. Code Ann.] § 62-13-102, was licensed to engage in the business of a real estate broker as required by [Tenn. Code Ann.] § 62-12-301[4] [sic] . . . at the time during which the sales at issue occurred. This action is therefore barred by [Tenn. Code Ann.] § 62-13-105.

The contracts upon which Plaintiff is suing were made in violation of a criminal statute, [Tenn. Code Ann.] § 62-13-110(a)(1) in that Realty Center/GMAC New Homes Division, LLC did not possess a license to act as a broker. The contracts are therefore unenforceable as a matter of law.

The Amended Complaint fails to state a claim upon which relief can be granted for Quantum Meruit and Unjust Enrichment as a matter of law because [Tenn. Code Ann.] § 62-13-105 bars all claims for compensation on any basis to any person other than licensed brokers without any exception, and no exception for such claims or causes of action may be engrafted onto the statute.

In addition, Dowlen, in its brief, refers to what it describes as Count III of Dowlen's counterclaim. Dowlen says this:

This amended pleading also added a new Count III to the Counterclaim entitled Recovery of Penalty asserting a claim for the statutory penalty provided by [Tenn. Code Ann.] § 62-13-110(b) (Supp. 2007) on the basis of conduct alleged to be violative of [Tenn. Code Ann.] § 62-13-310(a)(1)[5] [sic] . . . and [Tenn. Code Ann.] § 62-13-312(b)(4).

Dowlen, again in its brief, also points out paragraph 26 of the amended pleading as pertinent to this appeal. Paragraph 26 states:

---

[4] According to Dowlen, the reference should have been to Tenn. Code Ann. § 62-13-301 (Supp. 2008).

[5] According to Dowlen, the reference should have been to Tenn. Code Ann. § 62-13-110(a)(1) (Supp. 2007).

-3-

Dowlen is aggrieved by the conduct herein described by Realty Center New Homes Division, LLC and/or Realty Center/GMAC New Homes Division, LLC within the meaning of [Tenn. Code Ann.] § 62-13-310(b)[6][sic] . . . .

In May 2007, Realty Center filed a motion for summary judgment, which was granted in part and denied in part. This appeal challenges the trial court's order granting partial summary judgment, which order struck affirmative defenses and Count III of Dowlen's counterclaim, all of which are based on the theory that Realty Center was unlicensed. The trial court held that Realty Center was a licensed real estate broker at all times pertinent to the claims in the case, that Realty Center did not violate the Act and that Dowlen lacked standing to challenge Realty Center's use of the name "GMAC." The trial court awarded Realty Center $88,531.50 in commissions that were earned when the May 5, 2005, contract was signed. The court deferred to trial the remaining claims between the parties, including a claim for commissions on sales between the signing of the May 5, 2005, contract and termination of the contract in August 2005.

After a bench trial that began on October 30, 2007, and concluded on November 2, 2007, the court awarded Realty Center a total of $107,160.20 in commissions and $16,411.35 in prejudgment interest and dismissed Dowlen's remaining counterclaims. After hearing a motion to alter or amend and a motion for discretionary costs, the court amended the final figures to $104,256.20 for commissions, $15,890.00 for prejudgment interest and $2,377.85 for discretionary costs.

Dowlen did not file a transcript of the evidence pertaining to the trial of the case for consideration on appeal. Rather, Dowlen appeals solely the issues on which the trial court ruled against it in the court's August 2007 order granting partial summary judgment. Dowlen challenges the striking of its defenses under the Act, the dismissal of its counterclaim for a penalty or penalties under Tenn. Code Ann. § 62-13-110 and the granting to Realty Center of $88,531.50 in commissions.

II.

The issues on appeal, as stated by Dowlen, are:

1. Whether the trial court erred in granting summary judgment on Realty Center's claim for commissions and effectively overruling or striking Dowlen's defenses based upon alleged violations of the Tennessee Real Estate Broker License Act of 1973, as amended.

2. Whether the trial court erred in granting summary judgment dismissing Count III of Dowlen's Counterclaim.

---

[6] According to Dowlen, this reference should have been to Tenn. Code Ann. § 62-13-110(b) (Supp. 2007).

-4-

In Count III of Dowlen's counterclaim, it sought, as a penalty under Tenn. Code Ann. § 62-13-110) (Supp. 2007), to avoid paying commissions to Realty Center and to recover from Realty Center commissions it had already paid. The relief sought under Count III is based upon its allegation that Realty Center was unlicensed. Dowlen does not raise questions concerning the disposition of Counts I or II of its counterclaim, apparently because the trial court held for Dowlen on those claims, concluding that there were genuine issues of material fact that precluded summary judgment.

III.

In *Hannan v. Alltel Publ'g Co.*, the Tennessee Supreme Court recently addressed the burden-shifting analysis in summary judgment cases. The Court initially stated the general premises that have been the law of this State under *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993):

> Summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). In *Byrd*, this Court set out the basic principles involved in determining whether a motion for summary judgment should be granted. The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id*.

*Hannan v. Alltel Publ'g Co.*, ___ S.W.3d ___, No. E2006-01353-SC-R11-CV, 2008 WL 4790535 at *3 (Tenn., filed October 31, 2008). The Court stated that, "in Tennessee, a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Id*. at *6 (footnote omitted).

In a case such as this one, however, the burden-shifting analysis is reversed. In this case, the moving party is the party who bears the burden of proof at trial. "[A] plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law*." Id*. at *16 n. 6 (Koch, J., dissenting). When the party seeking summary judgment has made such a showing, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Byrd*, 847 S.W.2d at 211. The nonmoving party cannot simply rely upon its pleadings, but rather must set forth, by affidavit or discovery materials such as interrogatory responses, documents or admissions, specific facts showing there is a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.06 (2007); *Byrd*, 847 S.W.2d at 215-16.

IV.

A.

In its initial counterclaim, Dowlen raised the defense that Realty Center failed to state a claim because it contracted in the name of "Realty Center/GMAC, New Homes Division, LLC" and sued as "Realty Center New Homes Division, LLC, dba Prudential Realty Center/New Homes Division." The trial court relied on cases involving "misnomer" to hold that "[t]he fact that the named plaintiff is different from the contracting party is not sufficient to dismiss the case." *See, e.g., Life & Cas. Ins. Co. v. City of Nashville*, 137 S.W.2d 287, 289 (Tenn. 1940) (mere misnomer of corporation in bond, note, deed or contract does not render same invalid or inoperative). The trial court also relied on *Springfield Tobacco Redryers Corp. v. City of Springfield*, 293 S.W.2d 189, 198 (Tenn. Ct. App. 1956) (party entering contract with purported corporation admits corporate existence and is estopped to deny it). On appeal, Dowlen does not dispute the court's decision on this point. Dowlen thus concedes that summary judgment as to it First Defense was appropriate.

B.

Dowlen does argue that the name in which Realty Center contracted included the letters "GMAC" and that Realty Center used the trade name without authorization. The trial court noted that to the extent Dowlen's claim concerning the designation GMAC is a claim for wrongful use of the trademark, GMAC, and not Dowlen, would be the entity to raise the issue. We agree. Dowlen says in this court, however, that it was not "attempting to assert or protect the rights of GMAC Real Estate, LLC."

The trial court found that Dowlen had not shown that it suffered any damage as a result of Realty Center's use of GMAC as a part of its name in the contracts at issue. Dowlen argues that "the trial court should have reasonably inferred that Dowlen lost the use of the commissions put into escrow, which is a financial and economic loss to Dowlen." Under the summary judgment standard, this court "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd*, 847 S.W.2d at 210-11. In this case, however, Dowlen acknowledges that it submitted no evidence to support a claim of economic injury; thus, there is no basis from which to draw an inference. "The *existence* of damages cannot be uncertain, speculative, or remote." *Hannan*, 2008 WL 4790535 at *7 (citations omitted). *See also Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1984).

Realty Center supported its motion for summary judgment with the affidavit of Brian Kelly. In that affidavit, Mr. Kelly testified:

> Realty Center was formed in 1999 by filing Articles of Organization with the Tennessee Secretary of State. I am its chief manager and

broker. Realty Center filed a license with the Tennessee Real Estate Commission in 1999. . . . Realty Center offers real estate brokerage, marketing and sales services primarily to developers of new residential construction. Realty Center is affiliated with Realty Center of Chattanooga, Inc. Realty Center used the GMAC [trade name].

Mr. Kelly also attached as exhibits to his affidavit a license in the name of Realty Center New Homes Division, LLC, with an expiration date of December 31, 2004, and a license in the name of Realty Center New Homes Division, LLC d/b/a Realty Center/GMAC N,"[7] *i.e.*, Realty Center New Homes Division, LLC d/b/a Realty Center/GMAC New Homes, with an expiration date of December 31, 2006. In addition, Realty Homes supported its motion for summary judgment with excerpts from the deposition of Mr. Kelly and certain exhibits to the deposition. In reaching its decision on the summary judgment motion, the trial court pointed out Exhibit 22 to Mr. Kelly's deposition, which is the franchise agreement between GMAC Real Estate, LLC, and Realty Center of Chattanooga, Inc. d/b/a Realty Center of Chattanooga. Mr. Kelly testified that Realty Center, which contracted with Dowlen, is affiliated with Realty Center of Chattanooga, Inc., and authorized directly by GMAC representatives, as well as Realty Center of Chattanooga, Inc., to use the GMAC name.

Realty Center's motion, being properly supported with an affidavit, deposition testimony and documents, shifted the burden to Dowlen to show that there was a genuine issue of material fact concerning whether Realty Center was authorized to use the GMAC name. Dowlen cites this court to certain pages of Mr. Kelly's deposition and to the franchise agreement; however, we do not find any support in the materials cited for Dowlen's conclusion that Realty Center was not authorized, except, as Dowlen asserts, the testimony and franchise agreement do show that Realty Center is a different entity from Realty Center of Chattanooga, Inc. d/b/a Realty Center of Chattanooga.

Indeed, the only argument that Dowlen makes in its briefs is that (1) the franchise agreement was made between GMAC Real Estate, LLC, and Realty Center of Chattanooga, Inc. d/b/a Realty Center of Chattanooga and (2) Realty Center is a different entity from the corporate one that signed the franchise agreement. No one disputes this fact. And arguing that the two are different entities is a *non sequitur*. The fact that two entities exist does nothing to advance Dowlen's position. Dowlen's statement does not raise a genuine issue of material fact concerning whether Realty Center was authorized to use the trade name. Indeed, the fact that the corporate entity and the LLC are two separate entities does not even raise a doubt concerning Realty Center's factual evidence that the LLC is affiliated with the corporate entity and has been authorized directly by agents of GMAC and the corporate entity to use the trade name.

---

[7]Apparently, as reflected in the testimony, the name was too long to fit on the license. The "N" is the first letter of the first word that was cut off – "New Homes."

The trial court held that Dowlen's claims that Realty Center misused the trade name GMAC are "not a defense for Dowlen." The trial court reached the conclusion on the basis of standing. We agree with the trial court that Dowlen did not show the requisite injury as is required under the standing doctrine. *See, e.g.*, **Am. Civil Liberties Union of Tenn. v. Darnell**, 195 S.W.3d 612, 620 (Tenn. 2006) (The first indispensable element that must be shown in order to establish standing is that the plaintiff suffers "a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient.") (Citations omitted.) But we believe an additional basis for the holding is that, when faced with a well-supported motion for summary judgment on the issue, Dowlen failed to put forth specific facts to raise a genuine issue of material fact concerning whether Realty Center was authorized to use the GMAC designation. Certainly, the material filed by Realty Center did not support Dowlen's position on this point.

The language of Rule 56.06 is clear:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Tenn. R. Civ. P. 56.06. Dowlen did not produce specific facts showing that Realty Center misused, or was not authorized to use, the designation GMAC. Furthermore, Dowlen not only failed to establish that it was injured or damaged by Realty Center's use of the GMAC name, but Michael Dowlen admitted in his deposition testimony that Dowlen actually benefitted from Realty Center's use of the GMAC name. Thus, there was no genuine issue of material fact concerning whether Realty Center was authorized to use the GMAC trade name, and the trial court correctly held that Dowlen did not sustain its claim that it was injured as a result of an unauthorized use or misuse of the GMAC trade name.

The court also correctly dismissed Dowlen's related request under Tenn. Code Ann. § 62-13-312 (b)(4) (1997) that Realty Center be disciplined for use of the GMAC name. Tenn. Code Ann. § 62-13-312 (a) (1997) provides: "The commission may, upon its own motion, and, shall, upon the verified complaint in writing of any person setting forth a cause of action under this section, ascertain the facts and, if warranted, hold a hearing for reprimand, or for the suspension or revocation of a license." The statute then sets forth an extensive list of circumstances that may trigger an action. One circumstance is where a licensee is guilty of "[m]isleading or untruthful advertising, including use of the term 'Realtor' by a person not authorized to do so, or *using any other trade name* or insignia or membership in any real estate association or organization, of which the licensee is not a member." Tenn. Code Ann. § 62-13-312 (b)(4) (1997) (emphasis added). It is clear from the language of the statute that the Legislature made the initiation of discipline the

province of the commission, and not a court. Thus, as a matter of law, the trial court correctly dismissed Dowlen's request for penalties against Realty Center under Tenn. Code Ann. § 62-13-312(b)(4) (1997).

C.

Dowlen next argues that this court should allow its affirmative defenses and a counterclaim based on the theory that Realty Center was not licensed. In a Supreme Court case in which a grantor assigned its right and claim to certain damages to the "Mayor and City Council of Nashville" instead of to the "City of Nashville," it was argued that the City of Nashville had obtained no title or interest in the right of action. *Life & Cas. Ins. Co. of Tenn.*, 137 S.W.2d at 289. The Supreme Court stated, "The authorities in general, including the decisions of this court, are to the contrary." *Id*. The High Court went on to say,

> [i]t is the general rule that in case of the misnomer of a corporation in a grant, obligation, written contract, notice, etc., if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the body corporate is well named, *although there is a variation of words and syllables*.

*Id*. (emphasis added) (citation omitted). The Court continued its analysis, saying,

> [t]he general rule therefore is that the mere misnomer of a corporation in a bond, note or other deed or contract does not render the same invalid or inoperative, but the corporation may sue or be sued thereon in its true name with proper allegation and proof that it is the corporation intended; and its identity may be established by parol evidence. Nor will a grant or conveyance to or by a corporation be invalidated by a misnomer if its identity as the corporation intended is established.

*Id.* (citation omitted).

Although the name on the May 5, 2005, contract was not identical to the name in which Realty Center was licensed at the time the contract was signed, Dowlen clearly understood who the entity was it was dealing with. The 2005 contract was a replacement for a contract between the parties that had been existence since 2002. Michael Dowlen testified at his deposition that only after the litigation began did he begin to look up information on the Internet concerning the licensing of

-9-

Realty Center. He acknowledged that he could have done so earlier. It is clear that Mr. Dowlen did not rely in any way on the circumstances of Realty Center's licensing either in contracting with it or dealing with it thereafter. In addition, Mr. Dowlen testified that during the course of the business relationship, he never verbally or in writing notified Realty Center that he claimed it was an unlicensed entity or complained that it was an entity different from the one with whom his company had contracted.

It has long been the law in Tennessee that a misnomer in "a grant or obligation does not destroy or defeat the grant or obligation, nor prevent a recovery upon it in the true name, if the same be shown by proper and apt averments and proof." ***Bank of Tennessee ex. rel. Bonner v. Burke***, 41 Tenn. 623, 1860 WL 3104 (Tenn. 1860). From our review of the record *de novo*, we have determined that Realty Center has shown through documentary proof and testimony by affidavit and deposition that it was the entity with which Dowlen was doing business. Further, Michael Dowlen admitted in his deposition that Realty Center did the work necessary to bring all of the closed sales contracts to closing. Mr. Dowlen also acknowledged in his deposition testimony that the company does not claim any fraud or intentional or willful misrepresentations on Realty Center's part. It is quite clear from the record that Dowlen was not misled, nor was it confused, as to the entity it was dealing with. In the circumstances of this case, Dowlen cannot avoid its contracts by raising the issue that the contracts were signed in a name slightly different from the name in which the party was licensed.

The trial court dealt summarily and simply with the issue, citing ***Springfield Tobacco Redryers Corp. v. City of Springfield***, 293 S.W.2d 189 (Tenn. Ct. App. 1956). In the ***Springfield*** case, this court noted that "[i]t is well settled under our statutes and decisions that where a party enters into a contract with a purported corporation, he thereby admits its corporate existence, and is afterwards estopped to deny it . . . ." ***Id.*** at 198.

This is the rule in many jurisdictions. *See* ***Sunstone at Colorado Springs Homeowners Ass'n, Inc. v. White***, 56 P.3d 127, 129 (Colo. Ct. App. 2002) (slight variation or misnomer in association's name as used in declaration of covenants immaterial, and association not precluded from enforcing covenants). The ***Sunstone*** court approvingly cites ***Life & Cas. Ins. Co. v. City of Nashville***, which was relied on by the trial court in this case. *See also* ***Pinson v. Hartsfield Int'l Commerce Center, Ltd.***, 191 Ga. App. 459, 461, 382 S.E.2d 136, 138 (1989) (misnomer of corporation in written instrument not material if identity of corporation intended is clear or can be ascertained by proof); ***Curtis G. Testerman Co. v. Buck***, 340 Md. 569, 575, 667 A.2d 649, 652 (1995) (misnomer of corporation in contract not sufficient to release corporation from liability when identity of corporation was apparent and could be clearly ascertained from the face of the contract); ***Bil-Gel Co. v. Thoma***, 345 Mich. 698, 704-05, 77 N.W.2d 89, 92-93 (1956) (misnomer in written instrument will not defeat recovery thereon, if the identity sufficiently appears from the name employed in writing or is satisfactorily established by proof); ***Mail & Express Co. v. Parker Axles, Inc.***, 204 A.D. 327, 328, 198 N.Y.S. 20, 21 (1923) (misnomer or variation from precise name of

corporation in grant or obligation not material if identity of corporation is unmistakable, either from face of instrument or from proof or averments).

In the **Sunstone** case, the court specifically noted that a business name, unlike an individual's name, "usually consists of several words, and the transposition or interpolation of some of them may make no essential difference and is not so likely to confuse and mislead or hide the identity of the entity intended." **Sunstone**, 56 P.3d at 129 (citations omitted). Dowlen may not use the discrepancy between the name in the contract and the name on Realty Center's broker's license at the time it entered the contracts at issue to avoid its obligations under the contracts.

D.

Having contracted with the purported entity named in the contract, Dowlen is estopped to deny its existence. **Springfield Tobacco Redryers Corp.**, 293 S.W.2d at 198. As the Supreme Court has said, "Under these conditions it is too late, even if the right ever existed . . . for the cross complainants to call in question this deed for misnomer." **Life & Cas. Ins. Co. of Tennessee**, 137 S.W.2d at 289 (quoting **Precious Blood Soc'y v. Elsythe**, 120 Tenn. 40, 45-46, 50 S.W.759, 760 (Tenn. 1899)). The Court noted that on the record presented, the identity of the contracting party "is put beyond question." The Court continued,

> This being so, the general concurrence of modern authority is to the effect that a misnomer or variation from the precise name of a corporation in a grant or obligation by it or to it *is not material if the identity of the corporation is unmistakable*, either from the face of the instrument or from proof and averments.

*Id*. (emphasis added) (citations omitted). The same is true in this case. Although Dowlen makes much of the state of the license of Realty Center at various times, Dowlen unquestionably knew the identity of the party with which it was contracting and its arguments about licensing are immaterial to the case at hand.

Dowlen seeks to avoid the effect of the general rule, which has been the law of this State for more than a hundred years, by arguing that it has affirmative defenses because Realty Center, or the entity stated as a misnomer, are, or were, unlicensed. It is unclear in its arguments who it claims is unlicensed. In some arguments it seems to be saying that because Realty Center contracted in a different name than the one on its license, it somehow mysteriously became unlicensed. But the Act makes clear that revocation of a license only occurs as a result of action by the commission or a court. *See* Tenn. Code Ann. §§ 62-13-311 (1997); 62-13-312 (1997); 62-13-313 (Supp. 2008); and 62-13-314 (1997). Automatic revocation occurs only in the circumstance in which a licensee is convicted or pleads guilty to certain offenses under the Act. Tenn. Code Ann. § 62-13-312(f) (1997).

-11-

In some instances, Dowlen argues that "Realty Center New Homes Division, LLC d/b/a Realty Center/GMAC New Homes" – the entity named in the 2005 contract – was unlicensed. For example, the Fifth and Sixth Affirmative Defenses contain specific averments that "Realty Center New Homes Division, LLC d/b/a Realty Center/GMAC New Homes" is unlicensed. And, in both of its briefs to this court, Realty Center argues that Realty Center was required to become licensed in the purported name, or misnomer, or be deemed unlicensed. This is a specious argument. The purported entity exists only as a misnomer and thus is neither licensed nor unlicensed. Realty Center could choose to become licensed in that name. Contrary to Dowlen's arguments, however, nothing in the Act required, or requires, it to do so.

In other instances, Dowlen seems to be making a straightforward argument that there were gaps or discrepancies in Realty Center's licensing. All these arguments are immaterial given our analysis of this case under the general law dealing with misnomer. The trial court thus properly struck the affirmative defenses and Count III of the counterclaim that were based on the premise that Realty Center, or the purported entity in whose name it contracted, were unlicensed or improperly licensed.

To reach our decision in this case, we have carefully reviewed the provisions of the Act. We do not find support there for Dowlen's construction of the Act's licensing provisions. Dowlen's various arguments come down to this: Dowlen invites us to "contrue [the Act] to require that a real estate firm be licensed in the same name in which it contracts with its clients." We find that the Act does not contains such a requirement, and this court declines to directly, or indirectly, "construe" the Act to create one. That is the province of the Legislature.

E.

Realty Center's claim for commissions that were awarded as part of the judgment on Realty Center's motion for summary judgment were made under its 2002 contract with Dowlen. The 2005 agreement was a replacement for the 2002 agreement and its termination provision does not preclude Realty Center's claim for commissions for sales entered before May 2005. Michael Dowlen admitted that Realty Center had done the work to bring the sales contracts to closing. Dowlen's defenses having been striken, the trial court correctly awarded the commissions and the costs.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Dowlen Construction, LLC. This case is remanded for enforcement of the trial court's judgment and the collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE