## LINDEN v. HOSHAL.

1. PHYSICIANS AND SURGEONS—PARTNERSHIP—ORAL CONTRACTS—DIVISION OF NET INCOME FROM PRACTICE DURING MILITARY SERVICE OF MEMBER—ACCOUNTING—SPECIFIC PERFORMANCE.

   Oral contract between two physicians, practicing in partnership, whereby one remaining out of military service was to pay 25 per cent. of net income from practice to one who entered the service, so proved in suit by plaintiff who entered into service, was valid and entitled him to a decree for accounting thereunder for accrued sums but not specific performance since a court may not decree specific performance of payment of

   Mutuality of remedies as affecting relief by way of specific performance. Courts will ordinarily not decree payment of unliquidated sums not yet due. See 2 Restatement, Contracts, §§ 372 (2), 361.

sums of money not yet due and there was no mutuality in re-
spect to remedy.

2. SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY.
  There must be mutuality with respect to remedy as well as of
  obligation in order to entitle a party to a contract to specific
  performance thereof.

3. COSTS—MODIFICATION OF DECREE.
  Costs in Supreme Court are awarded to appellee notwithstand-
  ing trial court's decree was modified where irregularity in
  such decree was not prejudicial to appellant.

BOYLES, C. J., and CHANDLER, J., dissenting in part.

Appeal from Shiawassee; Collins (Joseph H.), J.
Submitted November 8, 1943. (Docket No. 97, Cal-
endar No. 42,552.) Decided December 29, 1943.

Bill by V. E. Linden against Verne Hoshal for an
accounting and specific performance of an oral
agreement. Decree for plaintiff. Defendant ap-
peals. Modified and affirmed.

*Pulver, Carland & Wyatt,* for plaintiff.

*Ellis J. Bowler,* for defendant.

CHANDLER, J. (*dissenting in part*). Plaintiff and
defendant, practicing physicians in the city of Du-
rand, Michigan, entered into a partnership agree-
ment on August 15, 1941, under the terms of which
they continued the practice of their profession as
partners. After the United States entered the pres-
ent war, it was apparent that at least one of them
would be obliged to serve in the army medical corps.
Because of this contingency, some conversations oc-
curred between them in an attempt to make some
financial arrangement which would be of assistance
to the one entering the service and his family.
Plaintiff claims that it was orally agreed that if

one of them entered the service the partner continuing the practice would pay to the one so entering the army 25 per cent. of the net income derived from the practice so long as he should remain in the army. The agreement was made in February or March, 1942. Thereafter, plaintiff made application for a commission in the army medical corps which was granted and on or about July 2, 1942, he discontinued his practice.

In the meantime, plaintiff's attorney had reduced the oral agreement to writing. After receiving his commission, he requested defendant to sign the same, who, after consultation with his attorney, refused to do so, stating ''he had been advised not to sign the agreement, he would be a damn fool if he did,'' and informed plaintiff that the agreement was terminated.

On or about August 2, 1942, one month after receiving his commission, plaintiff demanded that defendant account to him for the business of the preceding month and pay him 25 per cent. of the net income therefrom. Defendant refused and plaintiff filed the bill of complaint herein, praying for an accounting and specific performance of the agreement. From a decree entered in favor of plaintiff, defendant appeals.

Dr. Arnold, a practicing physician in the city of Owosso, Michigan, testified as to a conversation he had with defendant during the latter part of July, 1942, at a meeting of the procurement and assignment committee for the medical profession in Shiawassee county. He testified:

''He stated to me at that time that he had made an agreement with Dr. Linden providing for the payment of 25 per cent. of the net income to the person who entered the armed forces by the person who remained out of the service.

*"Q.* Did he state to you at that time that he had made an agreement with Dr. Linden providing for the payment of 25 per cent. of the net income to the person who entered the armed services by the person who remained out of service?

*"A.* Yes.

*"Q.* He stated they had made that agreement?

*"A.* He stated they talked about it and made an agreement which he agreed to and thought was perfectly fair, that whoever stayed would give 25 per cent.

*"Q.* Did he say to you at that time, make any claim to you at that time that included in that agreement was any agreement about the rent of the house?

*"A.* No, the house part of it,—he said that when he came to Durand. Dr. Bates—or Dr. Linden stated he could live in his house, but that he sold the house, that is one of the reasons he refused to sign the contract."

Dr. I. W. Greene, a witness for plaintiff, gave testimony corroborating that given by Dr. Arnold.

On cross-examination, defendant testified:

*"Q.* And you and he agreed, did you not, that in the event either of you entered the army the other would pay the remaining partner, the other partner would pay the remaining partner 25 per cent. of the net income?

*"A.* As the conversations finally wound up.

*"Q.* Did you agree to that?

*"A.* State it again please?

*"Mr. Carland:* Read it.

*"Q.* (Question read).

*"A.* I did.

*"Q.* You made that agreement?

*"A.* I did.

*"Q.* And at that time nothing was said about your staying in the house?

*"A.* To which time do you refer?

"*Q.* At the time you made the agreement about the 25 per cent.?

"*A.* That is right.

"*Q.* Because, you say, that is one of the reasons you didn't have any inkling but what you would be permitted to stay?

"*A.* That is right.

"*Q.* There wasn't any need for your discussing that was there?

"*A.* No.

"*Q.* That in reality was not a part of the 25 per cent. agreement at all, it wasn't discussed was it?

"*A.* That is right.

"*Q.* And neither was the vacation discussed was it?

"*A.* At that time it was not.

"*Q.* At the time you came to an agreement in regard to the 25 per cent. neither the house or the vacation was discussed?

"*A.* Nothing was discussed except the 25 per cent.

"*Q.* And that 25 per cent. agreement was to be effective for the duration, or for as long as the partner was to be in the army?

"*A.* I think it was.

"At the time we came to an agreement in regard to the 25 per cent. neither the house or the vacation was discussed. Nothing was discussed except the 25 per cent. I think that 25 per cent. agreement was to be effective for the duration or as long as the partner was to be in the army."

Plaintiff owned the house in which defendant had been living, the latter renting the property on a month-to-month basis. The answer set forth in defense that defendant refused to sign the agreement presented to him by plaintiff because it contained no provision permitting him to rent the house for a definite period, and also because it made no provision whereby plaintiff was to conduct the business

alone for a couple of weeks before entering the army so that defendant could have a vacation. It was claimed that these stipulations were a part of the oral agreement.

However, we think it clear from defendant's own testimony on cross-examination, that these stipulations were not part of the oral agreement made by the parties.

We believe it to be clearly apparent from the quoted testimony that these parties entered into the oral agreement alleged in plaintiff's bill of complaint. The agreement was plain and unambiguous, and the trial court did not err in the entry of the decree.

We have carefully reviewed this record and find that defendant's contentions that the agreement was to apply only in the event of induction of one of the parties into the armed forces and not in the event of enlistment to be unsupported by the evidence. Likewise, his claims that the contract was not complete, that it was not definite and certain, that mutuality was not present, that the duration of the agreement was not certain, and that the contract, if one ever existed, had been terminated, have all been considered and found to be inapplicable to the facts presented.

The decree should be affirmed, with costs to appellee.

BOYLES, C. J. (*dissenting in part*). I agree with Mr. Justice CHANDLER to the extent of affirming the decree of the lower court for specific performance. The court could not order an accounting unless and until it found a valid contract and to that extent a bill to declare specific performance was proper. However, the decree further provided for payment of an unliquidated and undetermined amount, with-

out an accounting having been had.  To that extent
the decree should be modified and the case should be
remanded for an accounting of the amount due, if
any, on the contract.

NORTH, J.  I concur with Mr. Justice CHANDLER in
affirming the decree insofar as it holds the contract
good and requires an accounting for accrued sums
by defendant to plaintiff; but note that the instant
case is not one to which the remedy of specific per-
formance is appropriate.  How can a court decree
specific performance of payment of unliquidated
sums of money not yet due?  And further, mutual-
ity of remedies is not available to both plaintiff and
defendant.  "There must be 'a mutuality of rem-
edies as well as of obligations.'"  *Matthews* v.
*Plymouth Community Hotel Co.*, 265 Mich. 309, cit-
ing numerous Michigan decisions.

The decree is affirmed wherein it holds the con-
tract valid and requires an accounting; and the case
should be remanded for further proceedings to that
end.  An amended decree in accord herewith, delet-
ing the words "that said agreement be specifically
performed," should be entered in this Court; but
since the irregularity in the trial court's decree was
not prejudicial to appellant, costs of this Court
should go to appellee.

STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE,
JJ., concurred with NORTH, J.