# IN THE COURT OF APPEALS OF IOWA

No. 20-0266
Filed November 30, 2020

**IN RE THE MARRIAGE OF CHRISTI ANN FERRIS**
**AND JOEL DAVID FERRIS**

**Upon the Petition of**
**CHRISTI ANN FERRIS,**
          Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**JOEL DAVID FERRIS,**
          Respondent-Appellant/Cross-Appellee.
_____

          Appeal from the Iowa District Court for Scott County, Mary E. Howes,

Judge.


          Joel Ferris appeals and Christi Ferris cross-appeals the decree dissolving

their marriage. **AFFIRMED AS MODIFIED.**



          Chase Cartee of Cartee Law Firm, P.C., Davenport, for appellant.

          M. Leanne Tyler of Tyler & Associates, PC, Bettendorf, for appellee.



          Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

Joel Ferris appeals and Christi Ferris cross-appeals the decree dissolving their marriage. Joel argues the district court erred in awarding physical care of the couple's children to Christi and that she engaged in parental alienation. On cross-appeal, Christi takes issue with several aspects of the district court's property division and requests appellate attorney fees.

## I.        Background Facts and Proceedings

Joel and Christi Ferris married in 2003. The couple shares four minor children. Christi filed for dissolution in May 2017. For the following two years the couple engaged in a prolonged, repugnant dispute for custody of the children and division of the couple's property. Following four days of trial, separated over several months, a decree was issued on August 9, 2019.[1]

The district court made significant credibility findings related to Joel's testimony. The court took issue with his testimony on the circumstances leading to his termination from a prior employer. It also found his repeated resistance to seeking prompt medical care for the children dangerous. The costs associated with medical care aligned with other testimony on "penny-pinching" practices that led to a problematic home environment for the entire family. However, the district court concluded Christi also spent excessive time away from the children and neglected family responsibilities due to recreational sports. Christi also displayed

---

[1] Trial was held on May 22 and 23, 2018; October 5, 2018; and January 8, 2019. The parties then waited seven months for a decree of dissolution. They each then filed motions pursuant to Iowa Rule of Civil Procedure 1.904(2), which were not resolved until January 2020. Notice of appeal was filed in February 2020.

poor judgment "that may have taken some of her time away from the marital home and children."

The decree, in relevant part, awarded the parties joint legal custody of the four children, and designated Christi "as the primary provider of physical care." Joel was provided "reasonable and liberal" visitation rights with a schedule. Christi was awarded her 2015 Nissan, and Joel his 2017 Silverado, each as sole property. The district court also ordered "that the pensions and deferred compensation annuities are to be divided as agreed by the parties and in accordance with the applicable law under a qualified domestic relations order (QDRO) to be drafted by petitioner's attorney for signature by the court." The court specified that order following motions to amend from both parties pursuant to Iowa Rule of Civil Procedure 1.904(2). In its fact findings, the district court valued Michigan farmland owned by the couple and awarded it to Joel.[2]

Joel appeals and Christi cross-appeals.

## II.    Standard of Review

We review dissolutions of marriage de novo. *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

---

[2] The value of the Michigan property is in dispute on appeal.

**III.    Discussion**

A.    Physical Care

Joel argues the district court erred in awarding physical care of the couples' four children to Christi.  He separately argues that Christi engaged in parental alienation.  Christi argues the district court's decision was appropriate.

Our supreme court has long held that "no hard and fast rule governs which parent should have custody.  It is not a matter of reward or punishment.  The issue is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the children."  *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974) (quoting *In re Marriage of Bowen,* 219 N.W.2d 683, 678–88 (Iowa 1974)).  In considering the "long range best interests of the children," we consider several factors:

> 1. The characteristics of each child, including age, maturity, mental and physical health.
> 2. The emotional, social, moral, material, and educational needs of the child.
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.
> 4. The capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the child.
> 5. The interpersonal relationship between the child and each parent.
> 6. The interpersonal relationship between the child and its siblings.
> 7. The effect on the child of continuing or disrupting an existing custodial status.
> 8. The nature of each proposed environment, including its stability and wholesomeness.
> 9. The preference of the child, if the child is of sufficient age and maturity.
> 10. The report and recommendation of the attorney for the child or other independent investigator.
> 11. Available alternatives.
> 12. Any other relevant matter the evidence in a particular case may disclose.

*Id.* at 166–67.

Physical care revolves around "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." *Hansen*, 733 N.W.2d at 691–92 (quoting Iowa Code § 598.1(7) (2005)). When shared care is not feasible "the court must choose a primary caretaker who is solely responsible for decisions concerning the child's routine care." *Id.* at 692. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695. Our review searches for "stability and continuity of caregiving," considering a parent's history of successful caregiving a "strong predictor" of future quality. *Id.* at 696–97.

Statutory factors also exist to aid courts in physical care determinations. *See* Iowa Code § 598.41(3) (2017). Joel's parental-alienation argument targets the court's consideration of "whether each parent can support the other parent's relationship with the child." *Id.* § 598.41(3)(e). One parent's attempt to alienate children from the other parent may "be given great weight if the evidence establishes [it] will adversely affect minor children." *In re Marriage of Vrban*, 359 N.W.2d 420, 425 (Iowa 1984).

Joel's arguments begin by focusing on Christi's alleged mental instability. He went to great lengths to insist Christi's presentation of the facts was not based in reality. Joel testified his reluctance to seek emergency medical care for the children in several situations came from his belief Christi exaggerated those situations. He also stated that Christi had a history of relying on him to care for the

children while she played recreational sports. Joel argues the oldest child's testimony, and preference for Christi's custody, was rooted in lies Christi told the children. He argues testimony about excessive time spent in Michigan was false. Joel finally argues all testimony related to his "penny-pinching" was actually a mischaracterization of Christi's conduct targeted to alienate the children from their father.

The record reveals that Christi did experience a period of extreme stress that led to hospitalization and mental-health intervention. That stress was directly related to the dissolution proceedings and an adverse reaction to a prescribed medication that Christi no longer takes. Since her hospitalization, Christi has engaged in consistent mental healthcare with positive results. The record shows Joel's delayed reactions to the childrens' medical-health emergencies were unreasonable. He forced one child with a broken arm to shower and another with a broken leg to walk around the yard before seeking care. He also administered medication to one child that exacerbated the child's symptoms. He also refused to seek medical care for a severe burn one child received in an accident on a motorbike. The accident happened while the eight-year-old child was unattended with Joel on a trip to Michigan. Joel's conduct in these situations shows his reluctance to seek medical care may be a danger to the children.

The record also shows that both parents spent time away from the family. Christi played recreational sports that kept her away from the family at times. However, it appears her involvement in recreational sports has waned since dissolution proceedings began. Joel spends a significant period of time in Michigan. The record shows he spends one to two weekends a month at the family

farms, with extended trips for planting, harvest, and family celebrations. The record shows these trips will continue because Joel was awarded the farmland as a part of the property distribution and his family resides in Michigan.

The record reveals that Christi did communicate with the oldest child about Joel's in-court statements. The child was then angry with Joel. However, that was not the sole basis for the child's stated preference of being in Christi's physical care. The child discussed Joel's shortcomings, including his failure to set schedules and create a calendar for the children, his insistence that the oldest child provide care to the youngest child, and his failure to prioritize the children's activities.

Joel attempted to show Christi manipulated and alienated the children in order to gain physical care. *See In re Marriage of Winnicke*, 497 N.W.2d 170, 173–74 (Iowa Ct. App. 1992). Joel argues Christi's testimony about his failure to contribute to the family's grocery bills and his militant focus on the length of the children's showers and the home's temperature settings was an attempt to force a wedge into the relationships he shares with the children. The record reveals the children "were dragged into the controversy" by both parents. *See Vrban*, 359 N.W.2d at 425. Yet, Christi testified that Joel is a good father and the oldest child testified Christi appears to have positive relationships with Joel's extended family. On our review of the record, we find no evidence that Christi engaged in alienation that would adversely affect the children. *See id.*

On our de novo review, we agree with the district court that Christi is the parent "most likely to bring [the children] to health, both physically and mentally,

and to social maturity." *See Hansen*, 733 N.W.2d at 695. We therefore affirm the award of physical care to Christi.

B. Pension Accounts

Christi has an Equistar Retirement Plan and Joel has a John Deere Pension Plan. Each is a defined-benefit pension plan. The district court awarded each party their own pension account.[3] In retirement, Joel will receive $2062.96 a month and Christi will receive about $320.00.[4] Christi argues the district court should have divided the pension accounts pursuant to our supreme court's calculation presented in *In re Marriage of Benson*, 515 N.W.2d 252, 255 (Iowa 1996). Joel argues the pensions were properly divided as a part of the big-picture equitable division of the parties' assets.

"Under Iowa law pensions are characterized as marital assets, subject to division in dissolution actions just as any other property." *Benson*, 545 N.W.2d at 255. "A pension plan is 'a plan established and maintained by an employer primarily to provide systematically for the payment of [generally ascertainable] benefits to . . . employees, or their beneficiaries, over a period of years (usually for life) after retirement.'" *Id.* at 253 (quoting *Black's Law Dictionary* 1135 (6th ed. 1990)). The *Benson* formula is used to divide pension plans and is a benefit to both the earning and beneficiary spouses. *Id.* at 255. It is the preferred method of distributing a defined-benefit plan. *In re Marriage of Brown*, 776 N.W.2d 644, 649–50 (Iowa 2009). Notwithstanding Christi's request for a *Benson* formula

---

[3] These awards were specified following each party's motion for reconsideration pursuant to rule 1.904(2).

[4] Christi's account will produce $318.08 per month in her retirement. If she elects to take it as a life annuity, she will receive $321.26 per month.

distribution, the district court did not divide the pension accounts using the *Benson* formula, nor did it disclose any consideration of the formula. Furthermore, the district court made no findings as to the relative value of each pension plan,[5] without which there can be no analysis the distribution of the plans was equitable. We find it equitable to follow the preferred method of distribution via the *Benson* formula for the Equistar and John Deere pensions. Thus, we modify the decree to provide that each party will receive value attributable to premarital contributions to their respective pension plans, if any, and each will receive one-half the value attributable to the period of marriage. Counsel for Christi shall promptly prepare a proposed QDRO for the Equistar pension and counsel for Joel shall prepare a proposed QDRO for the John Deere pension. Counsel shall exchange proposed QDRO's for approval prior to submission to the district court for approval. If consents cannot be accomplished, applications for approval of the proposed QDRO's shall be filed with clerk of the district court. *See id.*

Christi also requested survivor benefits. "Though spouse survivorship rights may be awarded to ensure the spouse receives a share of the pension plan in the event of the employee spouse's untimely death, such an award is not normal and typical." *In re Marriage of Freudenberg*, No. 17-1569, 2018 WL 6422879, *5 (Iowa Ct. App. Dec. 5, 2018) (altered for readability). The record before us does not support an award of survivor benefits.

---

[5] No evidence was presented upon which any such finding could have been made.

C. Accounts Omitted and Vehicle Debt

Christi argues the district court failed to allocate the funds from two accounts in the equitable distribution scheme, and asks that both be awarded to her. Christi also argues the vehicle debt was not assigned. Joel argues the accounts were distributed pursuant to agreement of the parties.

Christi's argument focuses on two Fidelity accounts, ending 487 and 059. Neither account was specifically awarded in the decree. The parties requested that the accounts be awarded in motions pursuant to rule 1.904(2). The court failed to do so. Joel's motion asked the court to include the accounts in its distribution list, but did not propose a division. On appeal, in a two sentence response, Joel acknowledges the accounts are small and in Christi's name; and asserts the accounts have already been split—a seeming contradiction to his 1.904(2) motion. On our de novo review, we determine it is equitable to award the two Fidelity accounts, ending 478 and 059, held in Christi's name to Christi, and modify the decree accordingly.

Each party was awarded one vehicle, Christi the Nissan and Joel the Silverado, "as sole property subject to no claim thereon of" the other spouse. The cars are also listed in the chart of marital assets and liabilities in the decree. The court also identified specific marital debts which were to be divided equally; the vehicles were not listed among those. Interpreting the chart and final list of orders together, it is clear the district court intended any debt on each vehicle would be awarded to the party receiving the vehicle, and we so order.

D. Michigan Farm Property

Christi argues the value given to the farm property in Michigan was too low and resulted in inequity. Joel notes that the value given by the court was lower than the value listed in the appraisal he submitted to the court. He asks that if the value is modified, it be modified to the value listed in his appraisal.

The district court made the following findings regarding the couple's property in Barry County, Michigan. "The Court adopts Joel's figure for the value of the parties Michigan farm, $438,300, relying on Petitioner's exhibits 14, 14A and 141B. The Court also, using those exhibits adopts the mortgage balance of $122,187. Thus, the Court awards the Michigan farm to Joel with a net value of $346,113." A quick review of the math from the foregoing sentence shows that $438,300.00 minus $122,187.00 would equal $316,113.00. However, Joel's appraiser valued the land at $468,300.00, not $438,300.00. It appears the district court calculation merely includes a scrivener's error when the decree showed a value of $438,300.00 instead of $468,300.00. We conclude when the court said it adopted "Joel's figure," it intended to use Joel's appraiser's figure which, when reduced by the mortgage, results in an equity of $346,113.00, which is the net value the court reached. We find that value is fairly within the range of the evidence and we decline Christi's request to change the value assigned to the Michigan farm property; and likewise her request for fifty percent of any increase in value fails.

E. Appellate Attorney Fees

Christi requests an award of appellate attorney fees due to what she argues was a windfall in assets awarded to Joel. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Kurtt*, 561

N.W.2d 385, 389 (Iowa Ct. App. 1997). "We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* Given the circumstances of this litigation, including issues raised on appeal and cross-appeal, we decline to award appellate attorney fees in this action.

## IV. Conclusion

On our de novo review, we affirm the district court's custody determination. We modify distribution of Fidelity accounts numbered 478 and 059 and the vehicle debts. We also modify distribution of the marital assets to provide application of the *Benson* formula to the pension plans, and we modify the decree by correcting the scrivener's error used in the calculation of the value of the Barry County, Michigan property. We decline to award appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**